WHITE, et al. *v.* TOWN OF DREW.

Apr. 28, 1952.

No. 38381 (58 So. (2d) 372)

**Neill, Clark & Townsend,** for appellants.

J. M. Forman, and W. F. Taylor, for appellee.

**Ethridge, J.**

This case involves the reasonableness of the extension of the municipal limits of the Town of Drew, Mississippi. It was originally chartered as a village in September, 1899. In June, 1910, the village of Drew became the Town of Drew with its boundaries continuing the same up to the proposed extension.

Miss. Laws 1950, Chap. 491, Secs. 10-14, being Miss. Code 1942, Supp., Secs. 3374-10 through 3374-14 provide that the governing authorities of a municipality must pass an ordinance describing with certainty the new territory and the entire boundary of the city as changed. Sec. 10 states: ''In the event the municipality desires to enlarge such boundaries, such ordinance shall in general terms describe the proposed improvements to be made in the annexed territory and the manner and extent of such improvements and the approximate time within which such improvements are to be made, and such ordinance shall

also contain a statement of the municipal or public services which such municipality proposes to render in such annexed territory.''

Upon the passage of such ordinance, the City must file a petition in the chancery court asking for confirmation of the extension by the court. Notice must be given and objections can be made. Sec. 13 then provides: ''If the chancellor finds from the evidence presented at such hearing that the proposed enlargement or contraction is reasonable and is required by the public convenience and necessity and, in the event of an enlargement of a municipality, that reasonable public and municipal services will be rendered in the annexed territory within a reasonable time, the chancellor shall enter a decree approving, ratifying and confirming the proposed enlargement or contraction, and describing the boundaries of the municipality as altered.  *  *  *.''

The ordinance in question was passed by the Board of Mayor and Aldermen of the Town of Drew at a regular meeting on October 3, 1950. The original town as it existed prior to the passage of this ordinance consisted of approximately 380.5 acres. The new territory proposed to be annexed to the Town is approximately 187.5 acres, constituting somewhat less than a fifty percent increase in size. On October 16 the Town filed a petition with the Chancery Court of Sunflower County under the above statute requesting the confirmation by the court of the proposed extension. Notice was given of a hearing on such petition, and appellants, consisting of several property owners and business men in the new territory, filed objections to the extension, denying that it was reasonable and that it was required for the public convenience and necessity. A lengthy hearing was had on these issues, the Town offering five and the appellants nine witnesses. The chancery court did not render any detailed findings of fact, but in its final decree adjudicated ''that the said ordinance enlarging the boundaries of the Town of Drew is reasonable, and is required by public convenience and

necessity, and that reasonable and public municipal services will be rendered in the annexed territory within a reasonable time, and that said proposed enlargement should be ratified, approved and confirmed." Hence the final decree of February 14, 1951, approved the extension.

In considering the issues raised on this appeal, it should be kept in mind that ▮▮ ▮ the board of mayor and aldermen, by the passage of the extension ordinance, adjudicated that the extension was reasonable; that "the burden was upon the objectors to overturn this and show such extension to be unreasonable"; and that the chancellor found that they had not done that. Ball v. City of Louisville, Miss. 1952, 56 So. (2d) 4; Kennedy v. City of Kosciusko, 1948, 203 Miss. 4, 33 So. (2d) 285; Forbes v. City of Meridian, 1906, 86 Miss. 243, 38 So. 676. Hence appellants are in error when they say that the burden of proof was upon the Town.

## I.

It is argued that there was insufficient evidence to support the finding that the improvements can be made in the new territory within a reasonable time. The requirement of Code Sec. 3374-13 is that the chancery court must find that "reasonable public and municipal services will be rendered in the annexed territory within a reasonable time". In this connection appellants say that appellee has made no approximately accurate estimate of the cost of the services which it proposes to render to the citizens in the annexed territory; that until such an estimate is made, the court can not properly determine that the proposed improvements will be completed within a reasonable time; and that further, the record shows that appellee has never made any investigation and has no idea as to when it can procure materials for making the improvements and has no knowledge as to how it would obtain such materials.

▮▮ The statute does not require a municipality prior to executing its ordinance of extension to ascertain the

precise cost of improvements and the sources from which the Town will obtain water and sewage pipes and other materials. The reason for such an omission is manifest when it is remembered that litigation over municipal extensions often consumes more than a year's time, that the market, availability and price of such materials vary from week to week, and that as a practical matter the governing authorities of a municipality must have considerable discretion in obtaining such materials and determining the details of new projects. The statutes require the ordinance to set up "the approximate time within which such improvements are to be made," and the chancery court to find that the improvements will be made "within a reasonable time". The use of the phrases "approximate time" and "reasonable time" indicate a legislative intent to vest a broad area of discretion in the governing body. However, the availability of materials, their cost, and the financial ability of the Town to meet that cost are relevant on whether the services can be rendered within a reasonable time.

██ █ The ordinance adjudicated that the town would grade and drain streets, install water and sewer lines and street lighting within a reasonable time not to exceed two years from the effective date of the extension "unless delayed by war or military preparedness restrictions". The ordinance further adjudicated that the Town would furnish to the new territory immediately upon the effective date of the ordinance police and fire protection and garbage disposal. With reference to the financial ability of appellee, the record shows that appellee has an assessed valuation of about $2,000,000 with a present general full faith and credit bonded indebtedness of about $6,000. This figure does not include revenue, special improvement, and industrial bonds. Total funds on hand in the Town's depository at the time of the trial were in excess of $114,675.40. Appellants make no real issue of the financial ability of appellee to make the improvements. Mayor O. M. Marsalis testified that an engi-

neer had advised with the mayor and board and had made a preliminary investigation of the improvements but that he had no definite figures on the cost of extending water, sewage and street services to the new territory, except that he estimated that it would cost about $2,000 for the Town to extend certain water lines and fire protection facilities north of the Town. The chancellor was amply warranted in finding that the Town's financial situation would permit the extension of municipal services to the new area.

Appellants argue that the scarcity of materials for sewage and water mains would make it impossible for the appellee to obtain these materials on the market in time to furnish such services within a reasonable time. However, the mayor and other witnesses for appellee testified that the Town was buying similar materials "all along", that they were available, and that the services could be furnished within two years. Some witnesses for appellants contested these conclusions in general terms, but the record supports the finding of the chancery court that the grading and drainage of streets, and installing water and sewer lines could be done in the annexed territory within a reasonable time, and that the period of two years stated in the extension ordinance constitutes a reasonable time for the furnishing of such services.

II.

Appellants assert that the finding of fact of the municipal authorities and of the chancery court that the proposed enlargment "is reasonable and is required by the public convenience and necessity" is wholly unsupported by the evidence and is against the overwhelming weight of the evidence. However, we think that the great weight of the evidence supports the finding of reasonableness. The objectors had the burden of proof to show the extension to be unreasonable. Ball v. City of Louisville, Miss. 1952, 56 So. (2d) 4.

It was stipulated that the population of the Town of Drew in 1930 was 1373 persons, in 1940, 1579 persons, and in 1950, 1677 persons. Appellants argue that the extension proposes to increase the area of the Town's territory slightly less than fifty percent, although during the past twenty years the population of the Town had increased by only 304 persons; and that much of the lands south and north which are proposed to be added are used exclusively for farming purposes. Most of the residents in the new area already receive electric power from the Mississippi Power and Light Company, which also serves the Town. They pay the power and light company directly for this service. Witnesses for appellants testified that in their opinions there was no need in the additional territory for police or health protection, although many of them would like to have these and other services if they did not have to pay taxes for them.

In the north part of the proposed addition, there are five gin plants, two anhydrous ammonia storage plants, and a gasoline storage plant. These industrial establishments, appellants argue, operate efficiently without any municipal services, and are not in need of them. It is also asserted that these industrial establishments make this northern area substantially unfit for residential use. Appellants point out that Miss. Laws 1948, Chap. 317, Sec. 10(j), amended Laws 1950, c. 475, provides that "bulk storage plants" for anhydrous ammonia (used in fertilizers) shall not be installed within the corporate limits of any town or city, or within 200 feet of any occupied building; and appellants argue that this extension would violate that statute. However, Secs. 10(j) and 12, and 4, 11, 17, 18, 20, 26, 27 of this statute indicate a legislative intent not to make the act retrospective, except where under Secs. 11 and 12 the public safety or health is involved, and that issue does not exist here. Nevertheless, we do not think that the statutory prohibition of the erection of such new plants within municipalities limits the power of

appellee to extend its corporate limits.  We do not decide any other proposition in this respect.

On this issue of reasonableness, most of the objectors who testified admitted that they did not object to and would like to have city services.  Their objections to the extension seem to have been based upon a disinclination to pay municipal taxes.  But that fact is not a controlling reason against annexation where the property will derive such benefits as lower insurance rates and better fire protection, and the present record reflects clearly that these benefits would result to the new residents. Forbes v. City of Meridian, supra; Ball v. City of Louisville, supra.  Many of the residents of the annexed territory already receive some of the municipal benefits. They are in the municipal school district, some of them obtain fire protection by use of the Town's fire trucks and department, for which they pay an extra fee; and all of them obtain the benefits of buying and selling in the Town.  Many of them obtain water from the municipal water plant, paying a 25 percent extra price for it.  But the schools and the water plant represent substantial original investments, and overheads, of which objectors obtained the benefit. The evidence showed that in addition to sewage, water, and streets, the new residents would obtain fire protection, services of an insect fogging machine, garbage removal, and sanitary improvements.  In many sections of the new territory there were open privies which are breeding places for disease.  While the population of the Town had increased only about 98 persons in the past ten years, it had decreased in colored population considerably and had an increase in white population of around four to five hundred people.  Within the past four years there has been about 100 new white residences erected in the present Town.  Although there were a few useable building lots for residences in the old town, they were not very desirable, and around 90 percent of the annexed area is suitable for that purpose.  There is a demand for such lots.  The Town has an excellent

fire department with modern equipment. One area to be brought within the appellee's boundaries encompasses both sides of new Highway 49W, upon which in addition to residences there are numerous business places and night clubs. The police chief and other witnesses testified that there had been numerous violations of law and disturbances of the peace in this area immediately adjacent to the town's limits, but that the municipal police authorities had no control over those occurrences, although numerous complaints had been made to them.

The foregoing is a summary of some of the major items of testimony on the issue of reasonableness of the extension. There are conflicts, but we certainly can not say that the municipal authorities and the chancery court were manifestly wrong in finding that the extension was reasonable. We do not review the cases dealing with extensions of municipal boundaries. They were recently discussed in some detail in Ball v. City of Louisville, Miss. 1952, 56 So. (2d) 4. See also Walker v. Town of Waynesboro, 1947, 202 Miss. 830, 33 So. (2d) 455; Kennedy v. City of Kosciusko, 1948, 203 Miss. 4, 33 So. (2d) 285; Nicholson v. Town of Booneville, 1950, 208 Miss. 800, 45 So. (2d) 594. We therefore affirm the decree approving the extension of the Town's municipal boundaries.

Affirmed.

**McGehee, C. J.,** and **Hall, Kyle** and **Holmes, JJ.,** concur.