CITY OF PICAYUNE *v.* QUICK & GRICE, INC., et al.

No. 41318 February 8, 1960 117 So. 2d 718

*Tate Thigpen,* Picayune, for the appellant.

*Ray M. Stewart,* Picayune; *Edward J. Currie, Sr. & Jr.,* Hattiesburg, for appellees.

McGEHEE, C. J.

In the matter of the enlargement of the boundaries of the City of Picayune, Pearl River County, Mississippi, the mayor and councilmen adopted City Ordinance No. 262 on September 2, 1958 to enlarge the corporate limits of the City of Picayune by adding thereto on the south and immediately adjacent to the existing corporate limits an area of land consisting of 240 acres, and on which there was located thirty places of business such as bulk gasoline sales stations, filling stations, cafes, a manufacturing plant and an empty building suitable for a manufacturing plant, etc. The owners of the improvements in the territory to be annexed based their objections to the annexation upon the fact that they had already provided at their own expense most of the facilities and benefits offered to them in general terms as set forth in the city ordinance and that they were not presently in need of any additional facilities and benefits offered by the city in its said ordinance. No *resident* of the area proposed to be annexed appeared at the hearing to testify either for or against the proposed annexation. The thirty places of business located in the territory proposed to be annexed were located in close proximity to the southern boundary line of the existing corporate limits, and these places of business therefore occupied a very small portion of the 240 acres sought to be annexed.

The proposed annexation included one area to the west of the New Orleans and Northeastern Railroad and another area to the east of the said line of railroad. There was no access from one of these areas to the other. The testimony was in conflict as to the area of undeveloped land already within the corporate limits of the city. There was testimony that some of the undeveloped areas within the corporate limits had remained undeveloped because of the fact that the owners of the undeveloped parcels of land were unwilling to sell the same. There was other testimony to the effect that although the population of

the city in 1930 was 4,698, in 1940, 5,129 and in 1950, 6,717 and that the population had increased at about the same or at a greater rate during the past decade, that there were still between 225 and 325 acres of undeveloped land within the existing corporate limits, and that the territory already in the corporate limits would be sufficient to take care of a population of at least 12,000 people. Thus it will be seen that the chancellor in disapproving the ordinance for the annexation as not being reasonable was influenced by the conflicting testimony as to whether or not the area proposed to be added would be furnished the facilities and services proposed by the ordinance within the reasonably foreseeable future, and as to whether the need for street lighting, garbage service, police and fire protection, fogging machines and other city services was either in use or presently urgent.

All of the thirteen witnesses who testified in behalf of the proposed expansion resided outside of the area proposed to be annexed, and as heretofore stated, no resident of the said area testified one way or the other.

Moreover the proof disclosed that there was a developed area near the eastern portion of the present corporate limits of the city and that the relocation of U. S. Highway No. 11 as a freeway was to run a short distance east of the said developed area, and that the ordinance in question did not propose to annex this developed area as a part of any long-range plan for the enlargement of the corporate limits, the theory of the objectors being that there was as much or more reason for this undeveloped area to the east to be annexed than there would be for the annexation of the small developed area south of the present corporate limits which formed only a small part of the 240 acres proposed to be included.

It was for the consideration of the chancellor as to whether or not the location of the freeway a short distance from developed area to the east of the present corporate limits would have the result of causing the city to develop toward the freeway.

There was a conflict in the testimony or at least in the contentions of the parties on this appeal as to what per cent, *from the standpoint of value,* of the territory proposed to be annexed, is owned by the objectors and what per cent thereof is owned by the proponents.

We have examined the cases as discussed in the briefs of Ball v. City of Louisville, 218 Miss. 867, 56 So. 2d 4; Forbes v. City of Meridian, 86 Miss. 243, 38 So. 676; Indianola v. Love, 227 Miss. 156, 86 So. 2d 871; Nicholson v. Booneville, 208 Miss. 800, 45 So. 2d 594 and White v. Town of Drew, 214 Miss. 147, 58 So. 2d 372, and we find that in those cases the trier of the facts found on conflicting testimony that the proposed expansion was reasonable whereas in the instant case the chancellor who heard the testimony of thirteen witnesses for the appellant and seven or eight witnesses for the appellees expressly found that the proposed expansion was not reasonable and that the ordinance should not therefore be approved. In those cases the factual situation was materially different to that involved in the instant case. Had the chancellor decided the issues in the present case in favor of the appellant, we would be confronted with an entirely different situation.

When the ordinance was submitted to the chancellor for his approval, it disclosed that two members of the city council and the mayor had voted for the city ordinance and that the other two members of the city council had voted against the same. While we do not think that this is controlling, we think that the chancellor was entitled to consider the same as a circumstance in the case. The City of Picayune was shown to have had a city planning commission, and at least four of the members testified in behalf of the annexation, but the proposed plan was not officially approved by the planning commission which seldom had a meeting or functioned as a planning commission, nor by the witness who purported to act as the city manager and planner. None of the members of

the mayor and city council appeared in court to urge the approval of the ordinance. Neither do we think this fact is a controlling one. We base our conclusion upon the fact that the chancellor who heard all of the testimony reached the conclusion that the ordinance should not be approved, basing his conclusion upon the conflicting views of the witnesses for the respective parties, and it is a well-settled rule in our jurisprudence that the decision of a chancellor on an issue of fact where the testimony is conflicting will not be disturbed unless we are able to say that from all the evidence he was manfiestly wrong, or that his decree was clearly against the overwhelming weight of the evidence. It was for the decision of the chancellor as to whether or not the expense that would be incident to the development of the territory proposed to be annexed would exceed the benefits to accrue to the taxpayers both inside of the corporate limits and those owning the area proposed to be annexed.

 Since the chancellor reached the conclusion that the proposed annexation was not reasonable, he dismissed the suit without prejudice, and we are unable to say, after studying the three volumes of the record, that he was manifestly wrong in his conclusion and that, therefore, the decree appealed from must be affirmed.

Affirmed.

*Lee, Kyle, Holmes* and *Arrington, JJ.,* concur.