630 So.2d 10 (1993)
In the Matter OF the Confirmation of Alteration of the Boundaries of the CITY OF HORN LAKE, MS and the City of Southaven, MS.
CITY OF SOUTHAVEN, Mississippi and Horn Lake Water Association, Inc.
v.
CITY OF HORN LAKE, Mississippi and Concerned Citizens Against Annexation: Mack Bowles, Bobby Logan, Dorothy Logan, S.I. Raley, W.D. Sisk, Perry D. Joyner, J.H. Little, Alice Jones and Jack Perry.
Nos. 91-CA-765, 91-CA-766.
Supreme Court of Mississippi.
September 16, 1993.
Rehearing Denied February 3, 1994.
*12 Jerry L. Mills and William A. Pyle, Pyle, Dreher, Mills & Dye, Jackson, Ronald L. Taylor, Southaven, James H. Herring, Herring, Long & Ward, Canton, for appellants.
B. Brennan Horan, Horan & Horan, Horn Lake, B.G. Perry, Southaven, James E. Holland, Cleveland, for appellees.
En Banc.
SULLIVAN, Justice, for the Court:
The DeSoto County Chancery Court denied the City of Southaven the opportunity to extend its municipal boundaries to include a one mile tract west of Interstate 55. The chancellor did grant Southaven's annexation requests for territories east of Interstate 55; however, Southaven alleges that it was manifest error to deny its annexation requests for the territory west of Interstate 55. Also, Southaven alleges that the chancellor's decision to allow the City of Horn Lake to amend its annexation ordinance and supplement an incorrect description of its entire municipal boundary violated the requirements of Mississippi Code Annotated, § 21-1-27 (1972). Southaven contends that this Court should also adopt new guidelines for determining reasonableness in annexation cases.

PRIOR HISTORY
The City of Horn Lake adopted an ordinance which sought to annex certain territories on December 7, 1989. The ordinance did not correctly define the entire boundary of the city and, when this matter was raised on Southaven's Pre-trial Motion to Dismiss, Horn Lake was granted leave to amend to correctly describe the currently existing boundaries. On October 18, 1990, Horn Lake passed an ordinance which corrected the faulty legal description and related back to the date of the original ordinance.
Trial was held on the December 7, 1989, ordinance. Southaven again renewed its objections, but the chancellor decided that this mistake in the Horn Lake boundary description was not critical.
On January 2, 1990, Southaven adopted an ordinance which sought to annex certain territory contiguous to its border. Shortly thereafter, Southaven filed its petition with the DeSoto County Chancery Court to annex an area of approximately 1 1/2 miles east of I-55 and an area of approximately 1 mile west of I-55 along the Church Road corridor.
Objections to Southaven's annexation were filed by Horn Lake, the DeSoto County Board of Supervisors, the Horn Lake Water Association, and the Concerned Citizens of DeSoto Woods. On May 4, 1990, the City of Horn Lake filed a petition to annex the same one-mile tract west of I-55. Horn Lake also petitioned to annex other areas which, in addition to the area also sought by Southaven, totals two square miles wholly between Highway 51 and I-55, adjoining the south *13 edge of a 1979 annexation and extending almost two miles south. On motion by Horn Lake, the annexation cases were consolidated for trial, which began on January 7, 1991.

THE FACTS
Southaven is the larger of the two cities, with a population of about twenty-two thousand (22,000) at the time of trial in 1991. It lies on both sides on I-55 and adjoins the State of Tennessee. On the west side of I-55, it extends southerly about two (2) miles from the Tennessee line, while, on the east side of I-55, it extends about three and one-fourth (3 1/4) miles southerly from the Tennessee line.
Horn Lake had a 1990 population of about nine thousand (9000) people. Its boundaries lie exclusively to the west of I-55. Both cities have a common boundary which begins at I-55 and runs about one and one-half (1 1/2) miles westerly; however, the western portions thereafter diverge. The depth of Horn Lake, to the north and south, is only about three-fourths (3/4) of a mile along the west side of I-55 and westerly about one (1) mile to U.S. Highway 51. Thereafter, it extends for another one and one-half (1 1/2) miles south on the western side of Highway 51.
Stateline Road is parallel to and about one-fourth (1/4) of a mile south of the Tennessee line. It is the first I-55 interchange south of the Tennessee line. This road has significant commercial development and the sales tax from this area generates a substantial proportion of Southaven's municipal income. Approximately two (2) miles south is another interchange at Goodman Road, which is also known as State Highway 302. This roadway services DeSoto County and has appreciable commercial development. Two (2) miles south of this interchange is an east-west county road known as Church Road. This roadway passes under I-55. The chancellor noted that the State Highway Department has agreed to study the possibility of an I-55 interchange at Church Road, but this Court is unaware of further developments.
No objection was voiced to Southaven's annexation of the land east of I-55. This area is roughly square, extends almost one and one-half (1 1/2) miles along I-55 and about one and one-fourth (1 1/4) miles to the east. Church Road runs through the southerly portion of this tract and a substantial residential development lies in the center of this area. The City of Southaven already provides water and sewer service to this tract.
The tract lying west of I-55 has irregular boundary lines and extends westerly from I-55 to Highway 51. Church Road runs east-west through the center of this tract. Development is not substantial, but there are a few houses and one business along this one mile stretch of Church Road. There are no public streets, except Church Road, and there is no central sewer system.
From Church Road north, the western edge of this parcel adjoins the City of Horn Lake along Highway 51. The northern boundary line of this parcel is the irregular southern boundary of an unincorporated subdivision area generally referred to as "DeSoto Woods."
Horn Lake alleges that it was not reasonable for Southaven to annex the area west of I-55 and filed a petition in a separate cause to annex this area plus other unincorporated areas to the north. Both DeSoto County and Horn Lake Water Association originally objected to Southaven's annexation west of I-55, but each withdrew its objections prior to trial.
The chancellor considered and weighed the twelve indicia of reasonableness, from this Court's decision in Bassett v. Town of Taylorsville, 542 So.2d 918, 921 (Miss. 1989), and held as follows:
1) Southaven has no substantial need for this area for any anticipated growth;
2) This area does not lie in Southaven's path of growth;
3) Annexation is not now required for planning, zoning, other city services, or protection from health hazards;
4) I-55 forms a natural barrier and a convenient boundary;
5) This area should more properly and suitably be annexed by Horn Lake.
Horn Lake sought annexation of approximately two (2) square miles, wholly between Highway 51 and I-55. This area includes *14 the southerly "Church Road" area of approximately one (1) square mile, with Church Road running east-west through the center of the tract. This is essentially the same area sought for annexation by Southaven.
The Chancellor again weighed these indicia of reasonableness for annexations and concluded:
1) As to the Church Road and DeSoto Woods area annexations, Horn Lake's proposal is unreasonable;
2) Neither area has a pressing need for services from the city and the city has no proposal for substantial improvements;
3) Horn Lake has not shown a need for these areas to accommodate their present expected growth;
4) Horn Lake's financial ability to adequately serve and improve its current population plus these new areas is questionable;
5) Horn Lake has failed to perform substantial obligations arising from a previous 1987 annexation;
6) The area residents are strongly opposed to annexation by Horn Lake.
The chancellor held that Southaven's annexation east of I-55 was reasonable, yet he concluded that Southaven's annexation of the proposed territory west of I-55 was not reasonable. Southaven's requested annexation west of I-55 was denied.
The chancellor concluded that only the northern portion of Horn Lake's annexation request was reasonable, and this area adjoins the city on two sides and contains three-fourths (3/4) of a mile of Highway 51. The remainder of the proposed annexation, which included part of the DeSoto Woods Subdivision and the Church Road area, sought by Southaven, was denied.
Southaven perfected its appeal to this Court, requesting determination of the following issues:
I. Whether the requirements of Mississippi Code Ann. § 21-1-27 (1972) are mandatory and jurisdictional and must these requirements be present at the time of filing a petition for annexation;
II. Whether the chancellor's decision, in refusing to allow the City of Southaven to annex the territory it sought west of I-55, was clearly erroneous; and
III. Whether this Court should adopt new guidelines for the determination of reasonableness in annexation cases.

THE LAW

I.

WHETHER THE REQUIREMENTS OF MISSISSIPPI CODE ANN. § 21-1-27 (1972) ARE MANDATORY AND JURISDICTIONAL AND MUST THESE REQUIREMENTS BE PRESENT AT THE TIME OF FILING A PETITION FOR ANNEXATION?
The chancellor's determination that Miss. Code Ann. § 21-1-27 (1972), does not require the "entire boundary as changed" to be defined with certainty is a question of law. The principle of "manifest error" only applies to factual situations, and this rule does not apply to questions of law. Holliman v. Charles L. Cherry & Associates, 569 So.2d 1139, 1145 (Miss. 1990). For questions of law, and not fact, "the manifest error/substantial error rule does not prevent this Court from conducting a de novo review of the chancellor's findings." Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).
Southaven submits that the requirements of Miss. Code Ann. § 21-1-27 (1972) are mandatory, and that the ordinance must:
1) define with certainty the territory proposed to be included in or excluded from the corporate limits;
2) define the entire boundary as changed;
3) describe in general terms the proposed improvements to be made;
4) describe the manner and extent of such improvements and the approximate time within which such improvements are to be made; and
5) contain a statement of municipal or public services the municipality proposes to render in the annexation area.
Southaven relies upon Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960), *15 where this Court quoted from Miss. Code Ann. § 3374-10 (1942), which stated,
In the event the municipality desires to enlarge such boundaries, such ordinance shall in general terms describe the proposed improvements to be made in the annexed territory and the manner and extent of such improvements and the approximate time within which such improvements are to be made, and such ordinance shall also contain a statement of municipal or public services which such municipality proposed to render in such annexed territory.
This Court then commented on the above language by stating that this quoted requirement is clearly mandatory. Dodd, 238 Miss. at 382, 118 So.2d at 323.
Southaven alleges that Horn Lake's original annexation ordinance failed to correctly define the existing corporate boundaries of Horn Lake, and without a valid ordinance of annexation before it, the lower court was without jurisdiction to grant an annexation. In pertinent part, Miss. Code Ann. § 21-1-27 states as follows:
When any municipality shall desire to enlarge or contract the boundaries thereof by adding thereto adjacent unincorporated territory or excluding therefrom any part of the incorporated territory of such municipality, the governing authorities of such municipality shall pass an ordinance defining with certainty the territory proposed to be included in or excluded from the corporate limits, and also defining the entire boundary as changed. In the event the municipality desires to enlarge such boundaries, such ordinance shall in general terms describe the proposed improvements to be made in the annexed territory, the manner and extent of such improvements, and the approximate time within which such improvements are to be made; such ordinance shall also contain a statement of the municipal or public services which such municipality proposes to render in such annexed territory... .
Dodd states that the requirements concerning improvements, public services, and the extent and time within which they are to be made, by operation of law, have to be set forth in the ordinance. 238 Miss. at 382, 118 So.2d at 323. Dodd did not state that the requirements call for "defining with certainty the territory proposed to be included in or excluded from the corporate limits, and also defining the entire boundary as changed." See Miss. Code Ann. § 21-1-27. Southaven has failed to cite any authority from which this Court could conclude that the other requirements of § 21-1-27 are mandatory. Dodd held that the omission of the "promises as to improvements and services" from the title of an annexation ordinance did not render the ordinance void, yet this issue was not raised herein. 238 Miss. at 382, 118 So.2d at 323.
Section 1 of the annexation ordinance adopted by Horn Lake properly described the area proposed for annexation. Section 2 of the same ordinance contains the mistake which is the focus of this argument. In Section 2, which described the entire city boundary as changed, an area previously annexed by Horn Lake was omitted. This omitted tract does not include any part of the proposed tract, nor is it adjacent or adjoining.
The crucial language of § 21-1-27 states that when annexation is sought by a municipality, the governing authorities shall "pass an ordinance defining with certainty the territory proposed to be included in or excluded from the corporate limits, and also defining the entire boundary as changed." Horn Lake described with certainty the territory proposed to be included. The city's mistake came in describing the entire boundary of the city after annexation because the ordinance erroneously omitted a previously annexed tract of land. This mistake did not cause any uncertainty about the territory which Horn Lake desired to annex.
The statute does not specifically state that the "entire boundary as changed" must be defined with certainty. This error is not one which describes, relates to, or even concerns the proposed annexation by Horn Lake; thus it is not a critical error which should have deprived the chancery court of jurisdiction. The chancellor did not err in *16 his interpretations of § 21-1-27, nor did he err in allowing Horn Lake to amend the annexation ordinance to correctly describe the entire boundary of Horn Lake.
Southaven also argues that this state consistently follows the "prior jurisdiction" rule on questions of municipal boundaries. They contend that if the chancellor had followed the principles of prior jurisdiction, then he would not have consolidated the trials again on the passage of Horn Lake's new ordinance. They cite Incorporation of Forrest Hill v. Fields, 280 So.2d 837 (Miss. 1973), for support.
In Fields, residents of an area called "Forrest Hill" fought the City of Jackson over the incorporation of a twelve mile area abutting the western boundary of Jackson. The trial court consolidated the annexation proceeding with an incorporation proceeding. During trial, the City of Jackson adopted an ordinance for extension of the boundary of Jackson to the Madison County line. Fields, 280 So.2d at 838. This ordinance did not refer to the previous ordinance concerning extension into the "Forrest Hill" area. The annexation proceeding by Forrest Hill had previously been dismissed; thus, the later ordinance did not have an affect on the validity or invalidity of the previous argument.
The ordinance in this case was amended to correctly describe the boundary of the City of Horn Lake, and its purpose was not to extend the boundaries of Horn Lake into other territories which were not described in the original annexation ordinance of December 7, 1989. Fields is factually distinguishable from the dispute in this case.

II.

WHETHER THE CHANCELLOR'S DECISION, IN REFUSING TO ALLOW THE CITY OF SOUTHAVEN TO ANNEX THE TERRITORY IT SOUGHT WEST OF I-55, WAS CLEARLY ERRONEOUS?
"This Court's standard of review is very limited. The Court can only reverse the Chancery Court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d 814, 819 (Miss. 1991). "If there is credible, albeit conflicting evidence, this Court will defer to the Chancery Court's findings." 588 So.2d at 814, citing, Bassett v. Town of Taylorsville, 542 So.2d 918, 921 (Miss. 1989). "In the context of conflicting evidence, this Court will not disturb a lower court ruling unless it can be said that from all the evidence such findings are manifestly wrong." 588 So.2d at 819, citing, Bassett, 542 So.2d at 921; McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss. 1987); Extension of Boundaries of City of Biloxi v. City of Biloxi, 361 So.2d 1372, 1376 (Miss. 1978); City of Picayune v. Quick, 238 Miss. 429, 117 So.2d 718 (1960). See also, Enlargement of Boundaries of Yazoo City v. Yazoo City, 452 So.2d 837 (Miss. 1984).
Southaven asserts that the issue before chancery courts in annexation proceedings is "reasonableness." This Court has set forth the standards for consideration in determining the reasonableness of an annexation request. These indicia include:
1) the municipality's need for expansion; 2) whether the area sought to be annexed is reasonably within a path of growth of the city; 3) the potential health hazards from sewage and waste disposal in the annexed area; 4) the municipality's financial ability to make the improvements and furnish municipal services promised; 5) the need for zoning and overall planning in the area; 6) the need for municipal services in the area sought to be annexed; 7) whether there are natural barriers between the city and the proposed annexation area; 8) the past performance and time element involved in the city's provision of services to its present residents; 9) the impact of the annexation upon those who live in or own property in the area proposed for annexation, Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057, 1069 (Miss. 1985); 10) the impact of the annexation upon the voting strength of protected minority groups, Enlargement of Boundaries of Yazoo City v. Yazoo City, 452 So.2d 837, 842-43 (Miss. 1984); 11) whether the property *17 owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexation will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of the proximity to the municipality without paying their fair share of taxes, Texas Gas Transmission Corp. v. City of Greenville, 242 So.2d 686, 689 (Miss. 1971); Forbes, et al. v. Mayor & Board of Aldermen of City of Meridian, 86 Miss. 243, 38 So. 676 (1905); and 12) any other factors that may suggest the reasonableness vel non.
Bassett v. Town of Taylorsville, 542 So.2d 918, 921 (Miss. 1989), citing City of Greenville v. Farmer's Inc., 513 So.2d 932, 941-942 (Miss. 1987).

1. NEED FOR EXPANSION
Lanny McKay, of the Mississippi Department of Economic Development, testified that forty-three percent (43%) of Southaven was undeveloped in March 1989. He stated that this percentage, in conjunction with the amount of Southaven's presently available land which is constrained from development by the flood plain and close proximity to the Memphis Airport, would not be a negative factor in the city's annexation request. To the contrary, he stated that he has worked on several other annexation ordinances, where the municipality had higher percentages of vacant and available land, and where annexation was found to be reasonable.
Michael Bridges, a developer and consultant for municipal annexations, testified that the flood plain functions as a severe restricting factor to any type of development for Southaven. It is not impossible to build on a flood plain, yet Bridges stated that the two solutions, either raising the level of the land to at least one foot above the flood plain or flood proofing the building, are very expensive.
Bridges stated that there is a ridge line which impinges upon Southaven's development and growth pattern. He classified this as a constraining element for Southaven's efforts to supply water and sewage services to areas on the opposite side of this natural impediment.
Bridges testified that Southaven has experienced rapid and extraordinary residential growth in recent years. He further stated that Southaven does not have adequate land resources to meet the residential growth needs it will face in the immediate future. Bridges testified that Southaven's annexation request was reasonable.
Carl Allen, director of planning and development for Southaven, testified that Southaven is steadily growing and needs to expand. He stated that two hundred and twenty (220) homes within Southaven are considered to be in the "buy-out" zone that falls in close proximity to the Memphis Airport flight pattern. These homes have been deemed uninhabitable, due to the noise levels, and this has forced numerous people to simultaneously search for homes.
Allen stated that Southaven currently has several residential developments in progress, but that a number of these are nearing capacity. Although these areas are not completely filled, he stated that there is a need to expand to areas where development is not approaching completion. Allen also testified that Southaven needs to expand to the west in order to incorporate the western portion of Plum Point, a residential and commercial Planned Urban Development, (PUD) which exists easterly and westerly of I-55. Allen stated that there would be less confusion in having the whole area under one jurisdiction.
Pete Aviotti, a landowner and developer for the Plum Point Development, testified that the airport "buy-out" has created tremendous development for the Plum Point area. He stated that this has caused growth to Plum Point Village and that it would be better for the whole PUD to be under one jurisdiction.
Southaven is a much more populated municipality than Horn Lake, and due to natural restraints, such as the flood plain, ridge line, and airport buy-out noise zone, this community is faced with meeting the needs of rapid residential growth and less than nine hundred (900) available acres to offer for development. Horn Lake, on the other hand, is *18 contending that it needs more room for commercial expansion. However, numerous experts testified that Horn Lake's current municipal boundaries can commercially double in size before new territory is necessary. At the time of trial, there were over eight hundred and thirty (830) acres available for commercial development within Horn Lake's boundaries.
The need for expansion has been demonstrated and the need for incorporating all of the PUD under one jurisdiction has been documented. However, the chancellor concluded that Southaven did not need to expand into the territory west of I-55 as follows:
1) the "buy-out" zone could be used for commercial purposes, which totally disregards the fact that two hundred and twenty (220) residential structures, located herein, can no longer be used for family dwelling;
2) few residents are likely to leave the remaining airport fly over zones on account of noise, which totally disregards the fact that housing costs in the area will rise as builders will have to comply with increased building specifications to dampen aircraft noise;
3) Southaven has substantial territory for expansion to the east and south, which disregards the fact that Plum Point Development is split by I-55 and has been annexed by Southaven up to the easterly boundary of I-55 and would, if contained within one jurisdiction, function more efficiently;
4) Aviotti and Ross, two major landowners in the contested area, testified that there were no present plans for development for the area proposed for annexation and Bridges testified that Southaven needs to annex undeveloped land; however, both facts of importance were not properly weighed by the chancellor; and
5) Southaven's original ordinance did not include any land west of I-55, and was only included at the request of area landowners who did not want to be annexed by Horn Lake, which overlooks Mayor Cates' testimony that Southaven desired this land because it is very easily accessible property that is vacant and can be controlled by Southaven as it grows.
The Plum Point Village development consists of six hundred and forty-four (644) acres, of which one hundred and twenty-one (121) acres are located west of I-55, and are under the jurisdiction of the PUD. The northern boundary is Nail Road. The southern boundary is Church Road. The eastern boundary is Elmore Road. However, only two hundred and twenty-one (221) acres have been developed and they consist of light industry zones, heavy commercial zones, and single family residential lots.
In Matter of Boundaries of City of Jackson, 551 So.2d 861, 865 (Miss. 1989), this Court held that "Jackson's apparent need for (potential for) expansion strongly suggests the annexation is reasonable." Southaven's need for expansion has been documented by numerous expert and lay witnesses, and the constraints upon development within their current boundaries have also been substantiated.
The Plum Point development, when completed, will serve a variety of residential and commercial needs. Southaven has been granted its annexation request for the areas east of I-55 and it was manifest error to deny the annexation proposal west of I-55. With Southaven's rapid rate of growth, there is a need for expansion, which will be most effectively fulfilled by granting the requested proposal west of I-55.
The chancellor's conclusion on this finding is not supported by the substantial and credible evidence. See generally, Matter of Boundaries of City of Vicksburg, 560 So.2d 713, 716 (Miss. 1990), citing Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi, 361 So.2d at 1376.

2. PATH OF GROWTH
Corrine Fox, President of Continental Consultants, Inc. and the expert planning witness for Horn Lake, conceded that the contested area could certainly be in the path of growth of both Horn Lake and Southaven. She also testified that I-55 would not serve *19 as a barrier to the area Horn Lake proposed for annexation.
Carl Allen, Lanny McKay, and Michael Bridges, each concluded that the area west of I-55 was in Southaven's path of growth. McKay indicated that the areas that were classified as within the growth path of Horn Lake were not the same areas that Southaven proposed to annex. Michael Bridges noted that without qualification, the area sought for annexation by Southaven lies within its path of growth.
Mayor Cates of Southaven also testified that the area west of I-55 is certainly within Southaven's path of growth. In his opinion, there were no natural barriers that would keep Southaven from extending services.
Ben Smith, the Horn Lake City Engineer, Joy Black, the Horn Lake Planning Director, and Mayor Thomas, each concluded that the area west of I-55 was the commercial growth corridor of Horn Lake and was within Horn Lake's path of growth. Black testified that if Southaven were allowed to annex west of I-55, this would completely block Horn Lake's path of growth to the east of their existing municipal boundaries.
Chancellor Bizzell concluded that the area west of I-55 was not in Southaven's path of growth. According to Matter of Boundaries of the City of Jackson, this factor requires only a showing that the area to be annexed is, "in a path of growth, not necessarily the most urgent or even the city's primary path of growth." 551 So.2d at 865. Also, this Court has previously held that our law gives municipalities the discretion, based on convenience and necessity, to choose between various paths of growth by annexation. Ritchie, et al. v. City of Brookhaven, 217 Miss. 860, 65 So.2d 436 (1953).
The chancellor held that Southaven has previously moved to the south and east, not west, and there is no planned growth for the area west of I-55. Regrettably he only considered whether this area was in Southaven's primary path of growth and did not consider the fact that this area only needed to be in a path of Southaven's growth.
These facts are distinguishable from Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d 814 (Miss. 1991), because the evidence presented does not indicate that the area west of I-55 is no longer in a path of growth of Southaven. See generally 588 So.2d at 822. In fact, the evidence conclusively demonstrates that it would be in Southaven's best interest to expand into an area including, and contiguous to, the remainder of the Plum Point PUD.
The chancellor decided that a new development will be needed in this area and that none is planned. In addition, the chancellor concluded that Southaven has not provided any services or other activities in the area. Yet, the chancellor's conclusion fails to account for the testimony of Smith, Southaven's City Engineer, when he said that much of the area proposed for annexation will have improvements made to it by the developers themselves. These improvements will then be dedicated to Southaven by the developers. Thus, much of the municipal development will actually come from the developers themselves, not Southaven, and the chancellor's characterization of Southaven's performance was at best hypothetical.
This Court does not sit to redetermine questions of fact. Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985). However, when the chancellor overlooks the fact that path of growth can be any path of growth and not just the path of growth, his decision is erroneous. Unlike the chancellor in Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 827, the chancellor here failed to consider all of Southaven's potential paths of growth when he ruled out the area west of I-55 as within the normal path of Southaven's growth. I would find that the area west of I-55 is within a path of growth of Southaven and that the chancellor's decision is not supported by the evidence. See generally, Matter of Boundaries of City of Vicksburg, 560 So.2d 713, 716 (Miss. 1990), citing Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi, 361 So.2d at 1376.

3. POTENTIAL HEALTH HAZARDS
The issue of septic tanks was discussed during trial, but neither party contends that there are threatening health hazards in the area proposed for annexation. *20 This Court has conceded that septic tanks are a relatively insignificant factor in the overall reasonableness determination. Matter of Boundaries of the City of Jackson, 551 So.2d at 866.
The chancellor concluded that since this area was within the Horn Lake Water Association water and sewage franchise, the relatively few septic tanks in the area are a concern which will be addressed by them whenever a municipal sewage system becomes necessary. The absence of health hazards is supported by the record. Neither participant contests the chancellor's finding. The chancellor's finding is supported by substantial and credible evidence. Matter of Boundaries of City of Jackson, 551 So.2d at 866.

4. FINANCIAL ABILITY
The Court recognized the uncontested financial ability of Southaven to make improvements and furnish the necessary services in the area proposed for annexation.

5. NEED FOR PLANNING AND ZONING
Horn Lake does not contest the chancellor's finding that DeSoto County provides adequate protection from improper zoning and planning.
Southaven's argument is that the proposed relocation of Northwest Community College into the area west of I-55 will increase traffic and congestion in the annexed area; therefore, there is a need to plan and zone before the community college relocates. Southaven has failed to prove that county zoning would be insufficient to meet Northwest's needs, and Southaven overlooked the fact that Dr. Haraway, President of Northwest, testified that the college was not concerned with whether the planning and zoning came from a city or the county.
In addition, Southaven also argues that the PUD needs to be under the jurisdiction of a single planning entity. Prior to this annexation request the entire PUD was under the sole jurisdiction of DeSoto County. The developers of the PUD have petitioned for Southaven to annex the entire PUD. There is also testimony, in the form of a petition, that numerous residents along Church Road request the City of Southaven to annex their property into Southaven and provide them with municipal services.
In Matter of Boundaries of City of Jackson, 551 So.2d at 867, this Court stated that, "where a substantial number of residents in the area have heretofore sought incorporation into the City of Ridgeland would seem to belie the suggestion that the people of the area are content with things as they are." The chancellor concluded that the area is zoned under the county plan and that there were no complaints to the current zoning.
This decision, as far as citizen complaints are concerned, fails to interpret the factor delineated above. Furthermore, Pete Aviotti, a representative of the Plum Point development, which the chancellor characterized as a major land owner in the annex area, specifically requested that Southaven annex the entire PUD.
Southaven's argument concerning the community college lacks persuasion. However, the resident landowners and area developers have made it clear that their interests are in receiving the municipal services of Southaven. While commercial development may not be immediately forthcoming, this factor should not outweigh these residents' present unhappiness with county control of zoning and planning.
The Plum Point development has a need for present zoning and overall planning. It would be detrimental to the construction and operation of this multi-functional urban development to allow the acreage east of I-55 to be developed under the planning and zoning authority of Southaven while forcing the remaining acreage west of I-55 to be developed under the discretion of the DeSoto County zoning and planning authorities. Unlike Matter of Enlargement of Corp. Limits of Hattiesburg, Southaven has demonstrated a convincing present need for zoning and overall planning in the area sought for annexation. See 588 So.2d at 824.
Moreover, the area residents demonstrated their unhappiness with their current zoning and planning. Thus, this Court cannot rely on the chancellor's conclusions, as it did in Matter of Enlargement of Corp. Limits of *21 Hattiesburg, 588 So.2d at 824, citing Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi, 361 So.2d at 1376.

6. NEED FOR MUNICIPAL SERVICES
In Matter of Enlargement of Corp. Limits of Hattiesburg, this Court considered the following elements for indicia of reasonableness: fire protection, police protection, garbage collection, street improvements, and water and sewer services. 588 So.2d at 824.
The chancellor held that the municipal level services provided: police protection, water and sewer, garbage collection, street improvements, and the like, are adequately provided by DeSoto County. The chancellor's findings, as to these services, were reasonable. However, the chancellor was manifestly wrong in determining that the current level of fire protection was adequate for the proposed annexed area.

a. FIRE PROTECTION
Fire protection is primarily provided by DeSoto Woods Volunteer Fire Department, with back-up available from either Horn Lake or Southaven. Larry Newton, Horn Lake Fire Chief, testified that DeSoto Woods Fire Department can provide only very limited fire protection to the proposed annexed area because they are unable to respond to day time fire calls. Furthermore, he stated that DeSoto's response time at night is often very slow, with an average response time of ten to twelve minutes. Newton said that this is crucial because a fire doubles in size every thirty seconds for the first minute and thereafter triples in size every thirty seconds.
In addition, Newton noted that Southaven, as a full-time fire department, can provide better fire protection. Newton also testified that Southaven has a hazardous material response team, but neither Horn Lake, nor DeSoto Volunteer Fire Department has a hazardous response team.
Vernon McCammon, City of Southaven Fire Chief, characterized the DeSoto Woods Volunteer Fire Department as inadequate to provide protection to Plum Point. McCammon stated that, as volunteer fire departments go, DeSoto Woods is not adequate.
Mack Bowles, a former volunteer of the DeSoto Woods Fire Department, stated that the DeSoto department provides adequate fire protection for the DeSoto Woods area. Eric Allen, a resident of DeSoto Woods, also stated that he was entirely satisfied with the fire protection extended by the DeSoto Woods Volunteer Department. However, neither individual is a resident of the area Southaven proposes to annex.
Joe Shoemaker, a Superintendent of the Public Protection Department of the Mississippi State Rating Bureau, stated that the DeSoto Woods Volunteer Fire Department currently has a fire insurance rating of ten (10). This rating is on a scale of one to ten (10), with ten (10) being the lowest rating. Horn Lake has a fire insurance rating of eight (8). Southaven, on the other hand, has a fire insurance rating of six (6), which means that its residents pay less for monthly fire insurance premiums.
The chancellor concluded that fire protection was the primary responsibility of DeSoto Woods, but the chancellor's decision failed to adequately weigh the importance of Chief Newton and Chief McCammon's testimony which seriously questioned the adequacy of the DeSoto Woods volunteer fire department. The chancellor also failed to properly consider the fire insurance ratings in Southaven's favor. See Matter of Boundaries of City of Jackson, 551 So.2d at 868. Thus, the chancellor's conclusion was not supported by the substantial and credible evidence.

b. POLICE PROTECTION
Tom Long, Southaven's Chief of Police, stated that if Southaven is allowed to annex west of I-55, his department would be able to provide immediate police protection. He testified that the DeSoto County Sheriff's office does the "bare minimum that's adequate" for law enforcement.
Darryl Whaley, Horn Lake's Chief of Police, stated that one of the area problems is the shooting of street signs with shotguns. He alleged that there would be little difference in the capacity of a municipality or a county to control this activity. Whaley testified that there is a present need for municipal level police protection in DeSoto Woods, *22 and that a municipality could respond faster to citizen calls than the county could.
Also, numerous residents of DeSoto Woods testified that they felt they were adequately protected by the DeSoto County Sheriff's Department.
The chancellor characterized the DeSoto County police protection as superior to that in most rural areas of Mississippi. His finding was reasonable in light of the fact of the sparse population in this undeveloped region. It is undisputed that Southaven, or even Horn Lake, could provide additional police protection. The fact remains that the DeSoto County police protection has not been characterized as inadequate, and the present necessity for such protection is non-existent. Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 824.
The lack of evidence demonstrating a present need for additional police protection supports the chancellor's conclusion. See Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 824.

c. WATER AND SEWER SERVICE
Mike Forsythe, Director of Public Works for Southaven, stated that Southaven already provides water services for a portion of the Plum Point Village and that Southaven has already developed plans to service additional areas within the annex proposal. In addition, Southaven currently provides sewer service for the Plum Point Village.
Mike Bridges, an annexation consultant, testified that the area west of I-55 is in need of municipal level sewage service, which he alleges the Horn Lake Water Association cannot provide.
J.W. McElhaney, President of the Horn Lake Water Association, testified that even if growth were to occur in the annexation area, he believed that the Horn Lake Water Association could still service the area.
Carl Allen noted that the west side of I-55 is within the Horn Lake Water Association jurisdiction and that Southaven could not provide water and/or sewer service to this area without the permission of the Horn Lake Water Association.
There are operational septic tanks in the area west of I-55, and Kirk Embry, of the State Department of Health, testified that the present soil conditions create seasonal problems for sewage disposal. He stated that, during the unusually wet periods of the year, the ground could not fully absorb the sewage.
The chancellor reasonably concluded that the water and sewer services, which are the responsibility of the Horn Lake Water Association, will not be affected by this annexation proposal. The evidence presented at trial did not document the existence of any health hazards with the current method of water and sewer services. The soil appears to allow sufficient percolation, except during a small portion of the year, and there was no credible evidence which documented the inadequacy of these systems. See Matter of Boundaries of City of Jackson, 551 So.2d at 866.

d. GARBAGE COLLECTION
Garbage collection is currently provided twice a week by DeSoto County. If annexation by a municipality is allowed, garbage service would be provided once a week. Garbage pickup by the county is free of charge to the area residents.
The current level and manner of garbage collection appears reasonable and sufficient to meet the needs of the DeSoto County residents. There was no indication that the present garbage collection was inadequate.

e. STREET IMPROVEMENTS
The chancellor noted that Church Road runs east-west through the center of the area Southaven proposes to annex west of I-55. There are no other public streets in the tract. The chancellor concluded that this road is adequately maintained by the county and is within the county's long range plan for improvement.
There is no indication that, with the current level of development on Church Road, DeSoto County could not continue to provide adequate maintenance to Church Road. This finding is supported by substantial evidence.

7. NATURAL BARRIERS
Pete Aviotti testified that I-55 is not a barrier to development or annexation. *23 Lanny McKay testified that I-55 is no more of a barrier to annexation than it is a barrier at State Line Road.
Mike Bridges testified that, proceeding south from the northern boundaries of Mississippi, down to the Louisiana border, almost every city that borders I-55 is on both sides of the interstate. Bridges also testified that this major thoroughfare has not been a barrier to expansion in municipal limits.
Ron Smith, an expert in the field of engineering, testified that the interstate would not be a significant barrier to providing services to the area Southaven proposed for annexation.
The chancellor concluded that between Southaven and the subject area, for a distance of two miles to the north and two miles to the south, the Church Road underpass is the only practicable crossing for vehicles, pedestrians or utilities. Thus I-55 definitely restricts access and convenience to the proposed territory west of the interstate.
The chancellor recognized that I-55 is not an impenetrable barrier but concluded that it does form an effective and permanent barrier between Southaven and the subject area west of I-55. He further decided that there was an overall economy existent here which would be further preserved by not duplicating municipal fire and police protection in the contested area.
This Court has previously stated that to "simply observe that there are certain manmade barriers such as the interstate ... should not be ignored." Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 825. In Matter of Enlargement of Corp. Limits of Hattiesburg, the chancellor concluded that I-59 and the county line separating Forrest and Lamar Counties should be considered natural boundaries. 588 So.2d at 825. In dicta, this Court stated that the Forrest County Chancellor noted that if there were other convincing evidence of the reasonableness of the proposed annexation, then the presence of I-59 and the county line would not have prevented him from granting the proposed enlargement.
The chancellor determined that I-55 was not an impenetrable barrier to the extension of Southaven's municipal services west of I-55. When this finding is considered under the totality of the circumstances, it was error for the chancellor to conclude that the annexation should not be confirmed. This Court recognizes that I-55 is in fact a penetrable barrier. We can distinguish Matter of Enlargement of Corp. Limits of Hattiesburg, by weighing this factor, along with the abundant other convincing evidence of reasonableness, in favor of this annexation. Both parties concede that I-55 has not served as a barrier to Southaven's previous expansion west of I-55, two miles north of the area in dispute. Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi, 361 So.2d at 1376. I do not believe that there is substantial and credible evidence which supports the chancellor's conclusion that I-55 is a barrier which should now serve to prevent the expansion of Southaven west of I-55.

8. PAST PERFORMANCE IN PROVISION OF CITY SERVICES
Mayor Cates stated that Southaven annexed new territories in 1988 and thereafter immediately provided the annexed area with fire protection, police protection, and insect control. The chancellor concluded that Southaven has provided excellent services to its residents and offered the same services to its pre-annexation residents as well as its newly annexed residents. This indicium of reasonableness also weighs in Southaven's favor.

9. IMPACT UPON RESIDENTS AND PROPERTY OWNERS
The mere fact that residents and landowners will have to begin to pay city property taxes is not sufficient to show unreasonableness. Matter of Boundaries of City of Jackson, 551 So.2d at 868. The Court is required to "balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area." Matter of Boundaries *24 of City of Jackson, 551 So.2d at 867-868.
Southaven has a lower fire insurance rating than either DeSoto County or Horn Lake; therefore, Southaven's annexation of this area west of I-55 would decrease these residents' monthly fire insurance premiums. Thus, substantial evidence supports the chancellor's finding that this would offset any city taxes on homes and automobiles stemming from annexation.
The chancellor also found that the residents west of I-55 requested Southaven to annex them because they did not want to be annexed by Horn Lake. He speculated that these residents had no strong objection to remaining in the county.
Roe Ross, a large landowner residing near the intersection of Church Road and Highway 51, testified that he signed a petition to have Southaven annex his land. His reasoning was based upon his belief that Southaven could better provide municipal services and was financially stable. He stated that he would be better off if annexed by Southaven.
Pete Aviotti stated that Plum Point requested that its entire boundary be annexed by Southaven. In addition, Aviotti identified a petition at trial, which consisted of numerous residents along Church Road who desired annexation to, and the furnishing of, Southaven's municipal services.
While Dr. Haraway, President of Northwest Community College, testified that the college did not object to remaining in the county, numerous other landowners and residents desired the services of Southaven, which implies present dissatisfaction with the services received from the county. The financial condition of the annexing petitioner was important to the residents, but those who testified at trial were as, or more, interested in the additional services which Southaven could provide to them.
There was insufficient evidence presented to prove that Southaven's annexation would have an adverse impact, economic or otherwise, upon those residents within the proposed annexation area. See Matter of Boundaries of City of Jackson, 551 So.2d at 868. These residents desire to be annexed by Southaven, and as a result of an annexation by Southaven, these residents will have a lower fire insurance rating, decreased fire insurance premiums, and will receive better services in fire protection.
In contrast to Matter of Enlargement of Corp. Limits of Hattiesburg, these residents have petitioned Southaven to annex them. See 588 So.2d at 826. They are not content with the level of rural services and want to become recipients of the municipal services which Southaven can offer them. This area will experience a significant positive impact from Southaven's annexation and, while the chancellor correctly held that this impact will not be adverse, he erred in failing to recognize the positive attributes which this annexation would yield.

10. IMPACT ON VOTING STRENGTH OF MINORITY GROUPS
The validity of this factor as an indicium in determining the reasonableness of an annexation was recognized in Enlargement of Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d at 837.
Southaven's Mayor Cates contended that this annexation petition was in no way formulated to decrease the strength of one hundred and sixty (160) black resident voters. Horn Lake does not dispute this contention. The chancellor did not err in concluding that Southaven's annexation would have no appreciable effect upon voting strength. See generally, Matter of Boundaries of City of Jackson, 551 So.2d at 868.

11. ENJOYMENT OF BENEFITS FROM THE CITY WITHOUT PAYING FAIR SHARE OF TAXES
The chancellor concluded that neither the residents nor the property owners in the contested area enjoy any substantial benefits from Southaven. However, fire protection is a major concern and Southaven's Fire Chief McCammon testified that his fire station has responded to forty-six (46) fire assistance calls from the Horn Lake Fire Department over the last ten (10) years. This indicium is still a valid consideration in passing upon the question of reasonableness. See Texas Gas Transmission Corp. v. City of Greenville, 242 So.2d 686 (Miss. 1971).
*25 This criterion was not significantly discussed by this Court in either Matter of Boundaries of City of Jackson, or Matter of Enlargement of Corp. Limits of Hattiesburg. The record demonstrates that the chancellor did not manifestly err in concluding that, despite increased secondary fire protection, these residents are not currently enjoying substantial benefits from Southaven.

12. OTHER FACTORS AFFECTING REASONABLENESS
In Matter of Boundaries of City of Jackson, 551 So.2d at 868, this Court concluded that becoming substantially landlocked by surrounding incorporated communities is a factor to be considered in determining reasonableness. In Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057, 1059 (Miss. 1985), appeal after remand, City of Greenville v. Farmers, Inc., 513 So.2d 932 (Miss. 1987), this Court stated that "an unreasonable annexation is an unfair one and, as fairness is the foundation of equity, an annexation cannot be both unreasonable and equitable."
The chancellor concluded that Horn Lake has a very low per capita income tax and allowing Southaven to annex the area west of I-55 would thwart the development of Horn Lake's commercial tax base. This finding ignores the fact that from 1988 to 1989, Horn Lake's sales tax revenues increased some sixty-five (65%) percent. Corrine Fox, the expert planning witness for Horn Lake, did conclude that if Southaven is allowed to annex west of I-55, this would be a means of cutting off Horn Lake's growth in that direction. She added that,
It still would not prohibit Horn Lake from taking in DeSoto Woods, but it would block Horn Lake to the east along Church Road and south along Church Road if, in fact, Southaven were permitted to annex that territory that they are seeking west of the interstate.
Fox also concluded that the lack of available commercial land "really does not play into any need to expand that Horn Lake has." In addition, she noted that Horn Lake's needs are for residential land. Fox claimed that there are other areas to the south and north that are not contested by Southaven and that, from a planning perspective, could better provide Horn Lake with available land for residential development.
Mike Bridges testified that the area Horn Lake presently has available for commercial growth is more desirable for commercial development than the territories that Horn Lake proposes to annex. Bridges concluded that Horn Lake does not have a present need to expand outside of its current municipal boundaries, and if Horn Lake is allowed to expand into its proposed annexation area, this annexation would retard growth in the proposed area.
It is unclear whether the chancellor's prediction that granting Southaven's annexation request, would "assure that Horn Lake would remain largely residential with inadequate commercial income to provide its citizens services comparable to cities its size," would materialize. The chancellor's hypothesis is certainly open to contradiction, and based upon the expert testimony from both Southaven and Horn Lake's perspective, he manifestly erred in holding that Horn Lake's commercial growth potential would be blocked by granting Southaven's request. Even under our limited standard of review, this Court can not give deference to the fact finder on this point. See Bassett, 542 So.2d at 921.
While granting this annexation to Southaven will increase its interstate access, it will not landlock Horn Lake. There have been no "other" factors affecting reasonableness which require the balance of equities and fairness to be weighted in Horn Lake's favor.

III.

WHETHER THIS COURT SHOULD ADOPT NEW GUIDELINES FOR THE DETERMINATION OF REASONABLENESS IN ANNEXATION CASES?
"This Court has set forth a list of factors or so called indicia of reasonableness to guide a chancellor in his determination of the reasonableness of a city's annexation request. The Court first enumerated these factors in Dodd (citation omitted), and in later decisions has expanded the list." Matter of Enlargement of Corp. Limits of Hattiesburg, *26 588 So.2d at 818. The Chancellor must consider all of these factors and determine, under the entire factual setting, whether the annexation is reasonable. Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 819.
Southaven contends that there no longer exists a suitable framework in this state for the judicial review of the reasonableness of municipality annexations. They maintain that a new approach is merited and suggest that this Court follow the "reasonable approach" set out by the Mississippi Municipal Association, "MMA," in Matter of Enlargement of Corp. Limits of Hattiesburg.
The proposal suggested by the MMA provides a number of criteria for this Court to consider. These include:
1) Does the municipality need to expand into surrounding territories when urban, suburban, or other non-rural growth has occurred or is expected to occur;
2) Assurance of a reasonable level of services and benefits; and,
3) Factors indicating unreasonableness.
Southaven has failed to inform this Court why, or which part of, the MMA proposal should be accepted as a replacement of the Court's current twelve indicia of reasonableness, which have been used by, and expanded upon since this Court's decision in Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960). Thus, Southaven has neglected to provide this Court with legal authority to support its argument and, as we stated in Kelly v. State, 553 So.2d 517, 521 (Miss. 1989), this prevents us from considering this claim on appeal. See also, R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990). This argument, or lack thereof, does not merit consideration at this time.

CONCLUSION
The chancellor did not err at law in his interpretations of Miss. Code Ann. § 21-1-27, nor did he err in allowing Horn Lake to amend the annexation ordinance to correctly describe the entire boundary of Horn Lake.
The factors considered by this Court for a determination on the reasonableness of an annexation, "are only indicia of reasonableness, not separate and distinct tests in and of themselves." Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 814, citing, Bassett, 542 So.2d at 921. The chancellor is to consider each of these criteria and determine, whether under the totality of the circumstances, the annexation is reasonable. Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d at 814, citing Matter of Boundaries of the City of Vicksburg, 560 So.2d at 716. In addition, the "reasonableness standard, of course, has in mind the interest of both of the municipality seeking annexation and, as well, the owners of property and other inhabitants of the area sought to be annexed." Matter of Boundaries of the City of Vicksburg, 560 So.2d at 715.
Taking into consideration the interests of Southaven, the property owners and residents of the contested area who desire to be annexed to Southaven, and an equitable weighing of the twelve indicia of reasonableness, the denial of Southaven's annexation request was not supported by the substantial and credible evidence and was manifest error.
We, therefore, affirm in part and reverse in part. This consolidated case is remanded to the Chancery Court of DeSoto County for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE CHANCERY COURT OF DeSOTO COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J.
PITTMAN, J., not participating.
SMITH, Justice, concurring in part, dissenting in part:
The majority is correct in affirming the special chancellor on granting Southaven's *27 annexation of territories east of Interstate 55. They have determined that the special chancellor was manifestly wrong in finding neither Southaven nor Horn Lake should be allowed to annex a disputed area west of I-55, and that the denial of Southaven's annexation request was not supported by substantial and credible evidence. I respectfully dissent. The Chancellor was correct in his decision. He was definitely not "manifestly wrong."
An examination of the history of these two cities from their prior annexation cases before this Court will assist us in understanding that the chancellor was obviously well informed on each city's normal path of growth. Horn Lake is a much older city than its neighbor. Southaven did not exist prior to 1978. It is helpful to know that this pattern of growth has existed many years, as shown by a review of prior cases.
In 1978, the City of Horn Lake, with a population of approximately 4,300 within a 1,998 acre tract, attempted to annex the Southaven Utility District, which had a population of approximately 17,330 within an 8,595.5 acre tract. See Ext. of Boundaries of Horn Lake, MS. v. Will Renfro, et al., 365 So.2d 623, 624 (Miss. 1978). The Chancellor therein held that Horn Lake failed to prove the annexation was reasonable and this Court agreed. Something more important was additionally elaborated upon by this Court: "The chancellor found that Horn Lake failed to prove a need for expanding its present limits; that because of a natural barrier and normal expansion trend, the two areas are growing parallel rather than towards each other." Id. at 626. (emphasis added). This Court noted the lower court's decision was supported by a finding that "Horn Lake Creek Flood Plain forms a natural barrier between the city and the area proposed to be annexed." It was determined that this barrier has an effect on the growing pattern of the area. Id. at 625. This flood plain barrier is located on the northern perimeter, west of I-55, separating Horn Lake from Southaven.
When Southaven subsequently incorporated, its city limits extended west of I-55. This fact should not concern our Court because Horn Lake could not expand further north anyway due to the flood plain. Without question this Court in 1978 recognized the significant factors of natural barriers between Horn Lake and Southaven and their normal path of growth running parallel to each other. Subsequently both cities developed a pattern of growth to the south, parallel to I-55.
In 1987, Horn Lake was allowed by this Court to annex land south of its city limits. A study by the city's expert, B.T. Page, "showed that the areas of significant development lay outside the city's southern border." McElhaney v. City of Horn Lake, 501 So.2d 401, 404 (Miss. 1987). The disputed area of Churchwood Subdivision and Church Road Estates lay in the path of growth of Horn Lake in 1987.
Significantly, the contested area now before the Court is also along Church Road, just east and south of the disputed property allowed to be annexed by this Court in 1987. A clear path of growth developed early in Horn Lake's history and continues today in the same general directions.
In the case at bar, the majority is correct in rejecting the proposed guidelines offered by the appellants. However, I can find no compelling reason, in accordance with prior decisions of this Court to hold the learned chancellor is "manifestly wrong" in finding that it was unreasonable for the City of Southaven to annex the disputed area west of Interstate 55.
In the Matter of the Extension of Boundaries of the City of Vicksburg, MS. v. Magnolia Marine Transport Company, et al., 560 So.2d 713, 716 (Miss. 1990), this Court said:
[I]f there is credible, albeit conflicting evidence, this Court will defer to the Chancery Court's finding. Bassett, 542 So.2d at 921, citing McElhaney, [v. City of Horn Lake, 501 So.2d [401] at 403 [Miss. 1987]; [Extension of Boundaries of] Moss Point [v. Sherman], 492 So.2d [289] at 290, [Miss. 1987]; Liddell v. Jones, 482 So.2d 1131 [Miss. 1986]; Hans v. Hans, 482 So.2d 1117 (Miss. 1986). In the context of conflicting credible evidence, this Court will *28 not disturb a lower court ruling unless it can be said that from all the evidence such findings are manifestly wrong. Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi v. City of Biloxi, 361 So.2d 1372, 1376 (Miss. 1978); City of Picayune v. Quick, 238 Miss. 429, 117 So.2d 718 (1960).
The proposed reasonableness standards offered by appellants are just as elusive as the current standards of reasonableness we are bound to apply. In City of Vicksburg, Justice Sullivan, dissenting, as follows:
Down through our most recent pronouncement we have set up lists of factors that the chancellor must consider in his determination of reasonableness, and then we have solemnly said that our lists are not really tests, but mere indicia of reasonableness. What does this mean? It means that one person, a chancellor, will decide if the annexation or any part of it, is "reasonable." What will be the yardstick: No one knows. It is not some mystical legal formula discoverable only by judges, steeped in the mysteries of law. It is nothing more than what the chancellor, on a given day, says it is.
Id.
This Court stated:
This Court's standard of review is very limited. The Court can only reverse the Chancery Court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence.
Matter of Enlargement of Corp. Limits of Hattiesburg, 588 So.2d 814, 818-19 (Miss. 1991).
This case is somewhat unusual in that two adjacent cities attempted to annex the area in dispute. The Chancellor's "other reasons," which might make an annexation reasonable, or unreasonable as in this case, apparently are not considered by the majority. There was ample proof on which the Chancellor could base his conclusion that it was not reasonable for Southaven to annex the area lying west of I-55 and east of Highway 51. Reasonableness is the only issue in annexation cases because:
An unreasonable annexation is an unfair one and, as fairness is the foundation of equity, an annexation cannot be both unreasonable and equitable. The converse is equally true for an annexation cannot be both inequitable and reasonable.
Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057, 1059 (Miss. 1985).
As this Court has previously held, reasonableness is to be determined by the chancellor and his determination is binding on this Court unless manifestly erroneous:
In reviewing cases of this nature the chancellor must balance the equities of the parties by weighing all relevant factors to determine if the city's claim of need is defeated by inequitable consequences to those in the annexation area.
Id. at 1060.
The Chancellor listed five reasons why this annexation attempt was unreasonable: (1) Southaven has no substantial need for this area for any anticipated expansion; (2) this area does not lie in Southaven's path of growth; (3) annexation is not now required for planning, zoning, other services, or protection from health hazards; (4) Interstate 55 forms a natural barrier and convenient boundary; and (5) this area should more properly and suitably be annexed by Horn Lake.
The Chancellor considered the totality of the circumstances and correctly found the area in dispute should not be annexed by either city at this time. The area in dispute was not needed for Southaven's orderly expansion. Indeed, in its original petition, the disputed area was not even included in the attempted annexation. Southaven has provided no service nor carried on any other activities in the area. Except for Northwest Community College, the owners of property in the disputed area plan little development at this time. Mr. Pete Aviotti, Jr. and Mr. Roe Ross, representing the two principal landowners in the area, testified there are no present plans for development. The present action by Southaven was begun only after *29 some of the landowners requested annexation to avoid being included in the Horn Lake annexation.
Horn Lake has only one interchange with Interstate 55, the Goodman Road interchange. If allowed to annex the Church Road area, Southaven would assuredly reap the commercial benefit of five interchange exits (assuming the two anticipated at Church Road), and Horn Lake would be forever limited to one. The Church Road corridor offers future accessibility as a second interchange on I-55 for Horn Lake. The City of Southaven's claim that the area sought along the Church Road corridor is for residential purposes is absurd and not supported by the testimony. Implicit commercial growth is beyond question. Extensive commercialization exists at each intersection mentioned in the record. To expect there will not be a future interchange with I-55 and Church Road is unreasonable. The county plans widening and improvement. The State Highway Department has agreed to an interchange study. This was not mere speculation by the Chancellor. Potential commercial development is obviously the principal basis for the present controversy between the two cities.
Chancellor Bizzell listed as one factor that the area in dispute should "more properly and suitably be annexed by Horn Lake." He obviously recognized the history of the two cities, the natural barriers of the flood plain and I-55, and the continued parallel growth of both cities. He did not say Southaven had no need to expand. He merely denied that the proper direction should be west of I-55 along the Church Road corridor. He allowed Southaven to annex an area east of I-55. The area allowed to be annexed receives the current benefit of city water service; yet, the disputed area west of I-55 does not. Water and sewer services are totally the responsibility of Horn Lake Water and Sewer Association in this disputed area. He recognized westward expansion beyond I-55 would be detrimental to both cities. The area in dispute is not in Southaven's established path of growth. That path is clearly to the east and south. This was established by the testimony of Ms. Corrine Fox.
If annexation of the disputed area is allowed by this Court, Southaven will begin to encircle Horn Lake on three sides: north, east, and south. We are assured of continued tension and likely litigation as growth continues south and west. At least two natural barriers exist, the flood plain to the north and I-55 to the east of Horn Lake. These characteristics have historically existed at least since 1978. A clear pattern and path of growth parallel to each other has emerged on the part of these two municipalities. The Chancellor's findings should be affirmed. If not, it would reasonably appear that this Court has assisted in land locking Horn Lake from its normal path of growth to the east and south. This Court will have contributed to Southaven's upper hand for future development even further to the west and south, sealing Horn Lake's fate forever.
The bottom line and simple truth is that Southaven is attempting to augment its tax base and gain an undue advantage on Horn Lake by crossing I-55 to the south. One might be concerned that Southaven has already crossed I-55 to the north. However, it should be noted that there is no flood plain on the south and west side of I-55 in this currently disputed area, as exists to the north between the two cities. It is practically and economically impossible for either city to build in a swamp. The cities are divided east and west by I-55, and their path of growth unquestionably parallels this reasonable barrier.
Interstate 55 forms a rather effective and permanent barrier between Southaven and the disputed area. The Church Road underpass is the only practicable crossing for vehicles, pedestrians or utilities for two miles both north and south of this point of intersection. Similar to the barriers mentioned in other cases argued before this Court, I-55 is not absolutely impenetrable, but it creates enough inconvenience and restriction of access to be considered a negative factor.
This Court has recognized the existence of highways as barriers previously. In the case, In the Matter of Enlargement of Corp. Limits of the City of Hattiesburg, 588 So.2d at 825, this Court noted that the Chancellor "held that Interstate 59 and the county line *30 separating Forrest and Lamar Counties should be considered natural barriers." Hattiesburg had annexed land in Lamar County and across Interstate 59 in previous annexations. But in the previous Hattiesburg annexations where the city was allowed to cross I-59, no objections was raised by anyone. Objections were filed in this case. It is also noteworthy that in the prior Hattiesburg annexations of land across I-59, no other cities were opposed, and none considered the areas concerned to be in their normal path of growth. When two cities attempt to annex the same area, we are clearly hard pressed to legally explain why one has a greater right to annex the disputed area than the other. How would this Court be compelled to decide if at some future date, Horn Lake attempted to cross I-55 eastward and annex land claiming it to be within their normal path of growth? Would there be objections raised on behalf of Southaven? I think most definitely there would be objections filed. Who then would be correct? Who would be allowed to prevail? Common sense should prevail along with the correct law. I do not believe this Court can give legally sufficient reasons why the Chancellor is manifestly wrong. Consequently, we must defer to the learned Chancellor.
The Chancellor fully understood the historical significance of the areas' two natural barriers, the flood plain to the north dividing the cities north and south, and I-55 dividing the two cities east and west. He further demonstrated a knowledge of the established path of growth of both cities because of these barriers. Both stand out like lines of demarcation between Horn Lake and Southaven. Southaven should lose in its attempt to cut off Horn Lake's natural path of growth. The Chancellor's opinion and conclusions are based on sound applicable law. His detailed analysis of the facts was properly considered and applied to the indicia of reasonableness. The Chancellor was correct, and no error exists, certainly no "manifest error." The decision of the lower court should be affirmed. Southaven should be allowed to annex the territory east of Interstate 55. Neither Horn Lake nor Southaven should be allowed to annex the disputed area at this time.
DAN M. LEE, P.J., joins this opinion.