# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-AN-01368-SCT

*IN THE MATTER OF THE EXTENSION OF THE*
*BOUNDARIES OF THE CITY OF LAUREL,*
*MISSISSIPPI: CITY OF LAUREL, MISSISSIPPI*

*v.*

*SHARON WATERWORKS ASSOCIATION, SHADY*
*GROVE WATER WORKS ASSOCIATION, SHADY*
*GROVE UTILITY DISTRICT, AND JONES COUNTY*
*BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2003 |
| TRIAL JUDGE: | HON. R. B. REEVES, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY L. MILLS |
| | NORMAN GENE HORTMAN |
| ATTORNEYS FOR APPELLEES: | ROBERT L. ROGERS, JR. |
| | JOSEPH EDGAR FILLINGANE |
| | TIM HANCOCK |
| | JAMES ROBERT SULLIVAN, JR. |
| | J. ROBERT SULLIVAN, SR. |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | VACATED AND REMANDED - 08/11/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     This case involves an appeal from the Second Judicial District of the Chancery Court of Jones County in which the City of Laurel petitioned to annex three parcels of land located

in Jones County. The City's petition proposed three areas to be added to the City known as the Northern Parcel, the Southern Parcel and the Western Parcel. The chancellor further described the parcels as the (1) Pendorff area (Southern Parcel), (2) the Western Parcel (or Sports Complex area), (3) the Shady Grove Parcel (Northern Parcel) and (4) the Sharon Parcel (Northern Parcel). The chancery court granted the annexation as to the land known as the Pendorff area only.

¶2. On June 18, 1997, the City of Laurel ("the City") filed a complaint in the nature of a petition to ratify and confirm the extension of its boundaries in the Chancery Court of Jones County, Mississippi. Honorable R. B. Reeves, Jr., senior status judge appointed to hear the case, issued a decision by letter dated January 28, 2000, to the parties that the HB 1730 Regular Session 1996, was constitutional, did not violate § 88 of the Mississippi Constitution of 1890, and that the City had 20 days to amend its complaint to comply of the provisions of Section 12 of HB 1730.[1] No interlocutory appeal was sought. Judge Reeves did not issue an order as to the constitutionality of House Bill 1730. The City later amended it complaint to comply with H B 1730. HB 1730 stated:

> None of the territory lying within the district shall be subject to an Annexation by any city, town or village **unless all of the territory of the district is annexed**, in which event the city, town or village shall assume the operation and maintenance of the facilities of the district with respect to the payment of any

---

[1] A notice of claim of unconstitutionality of a certain local and private act was provided by the City of Laurel to the Attorney General of Mississippi. The Attorney General filed a notice of intervention to defend the constitutionality of relevant statutes and joinder in memorandum in response to the City of Laurel's claim of unconstitutionality of certain local and private act. *See* Miss. R. Civ. P. 24(d).

2

outstanding bonds of the district and all other contractual obligations of the district.

(emphasis added). Therefore, HB 1730 required that either all or none of the land in a district be annexed. Consequently, the City added a remaining portion of the Shady Grove Utility District located in the Northern Parcel which increased the size of the original proposed annexation area (PAA). Thereafter on February 9, 2001, the City filed a second amended complaint. The case was heard before the Judge Reeves, between June 19, 2001 and January 4, 2002.

¶3. The chancellor filed his opinion on March 20, 2002. In his opinion, the chancellor determined that the annexation of the Pendorff area, in the Southern Parcel, was reasonable under the totality of the circumstances. However, the annexation of the other areas were not reasonable. On May 30, 2003, the chancellor signed a final judgment approving the enlargement and extension of the boundaries of the City of Laurel as to the Pendorff area only. Following the final judgement and these proceedings, the City now appeals to this Court.

¶4. We vacate the chancellor's judgment and remand this case for the chancellor to clarify his findings regarding the annexation. The chancellor's order does not specifically distinguish between all the parcels of the PAA and provide enough basis for his ruling concerning whether a specific area should be annexed. In other words, the chancellor's ruling was vague and ambiguous. It did not set out a clear basis explaining why a particular parcel should or should not be annexed. A few of the indicia of reasonableness do have sufficient information, but as a whole, there is not enough information concerning the twelve indicia of reasonableness to

3

make an informed determination. Therefore, this Court does not have enough information to determine whether the chancellor's reasoning and ruling as to the parcels provides substantial evidence that the annexation should be either granted or denied.

**FACTS**

¶5.     The City filed a petition for the annexation of three areas of the Second Judicial District of Jones County into the City of Laurel, which is also located in Jones County, Mississippi. The chancellor approved the annexation of the Pendorff area only.

¶6.     The chancellor followed his opinion with a final judgment ruling that the approval of the enlargement and extension of the boundaries of the City of Laurel to be reasonable as the to Pendorff area only on May 30, 2003. The City filed its appeal objecting to the denial of the annexation of the other proposed areas. The appellees in this case are the Shady Grove Water Works Association, the Shady Grove Utility District and Jones County School District the Sharon area objectors and other individual objectors. In its appeal, the City raises the following issues for review by this Court:

> **I.      Whether the provision of House Bill 1730 violates § 88 of the Mississippi Constitution of 1890.**
>
> **II.     Whether the chancellor was manifestly wrong in limiting the annexation of the City of Laurel to the Pendorff area.**

**DISCUSSION**

> **I.      Whether the provision of House Bill 1730 violates § 88 of the Mississippi Constitution of 1890.**

4

¶7.    When the City initially began the annexation process, it sought annexation of a much smaller area of approximately 10.9 square miles.  Included in the original PAA was a portion of the Shady Grove Utility District located in the Northern Parcel.  Objectors asserted that HB 1730 required the annexation of all or none of the Shady Grove Utility District.  The City challenged the constitutionality of HB 1730 claiming that it violated § 88 of the Mississippi Constitution of 1890.  The chancellor found that the provision was constitutional. Thereafter, the City had the choice of either petitioning to annex all or none of the Shady Grove Utility District based upon the chancellor's ruling.  The City later amended the annexation area to include all of the Shady Grove Utility District.  The inclusion of all of this district into the PAA expanded the original PAA from 10.9 miles to approximately 17 square miles. Ultimately, the chancellor did not include the Shady Grove Utility District located in the Northern Parcel as part of the annexation area.  Only the Pendorff area was allowed to be annexed.  The chancellor did not issue an order as to his ruling regarding the constitutional issue.  The chancellor's letter dated January 28, 2000, is not an order.  Furthermore, the chancellor's final judgment did not incorporate the constitutional issue.  Therefore, this Court does not have an order from the trial court to consider on appeal.  On remand, the chancellor is instructed to issue a detailed order as to his findings and ruling as to the constitutionality of HB 1730.

**II.    Whether the chancellor was manifestly wrong in limiting the annexation of the City of Laurel to the Pendorff area.**

¶8.     This Court has very recently set out the standard of review in annexation matters in *In re Extension of Boundaries of City of Hattiesburg*, 840 So.2d 69 (Miss. 2003).  Our Court has limited power in annexation matters, reversing a chancellor's findings as to reasonableness of the annexation only when a "chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence."  *Id*. at 81 (citing *In re Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So.2d 490, 494 (Miss. 1995)).  *See also* *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss. 1989).  In *Bassett,* we held that:

> Where there is conflicting, credible evidence, we defer to the findings below. Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence. We may only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made.

*Bassett*, 542 So.2d at 921.   "The judicial function is limited to the question of whether the annexation is reasonable." *In re Enlargement and Extension of Municipal Boundaries of City of Biloxi*, 744 So.2d 270, 276 (Miss. 1999).  The party seeking the annexation has the burden of proving the reasonableness of the annexation. *Id*.  In the case of *In re Extension of the Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So.2d 548, 550 (Miss.1995) this Court reiterated our long standing twelve indicia of reasonableness in annexation cases:

> In a series of cases beginning with *Dodd v. City of Jackson*, 238 Miss. 372, 396-97, 118 So.2d 319, 330 (1960) down through most recently *McElhaney v. City of Horn Lake*, 501 So.2d 401, 403-04, (Miss.1987) and *City of Greenville v. Farmers, Inc.*, 513 So.2d 932, 941 (Miss.1987), we have

6

recognized at least eight indicia of reasonableness. These include *(1)* the municipality's *need for expansion*, *(2)* whether the area sought to be annexed is reasonably within a *path of growth* of the city, *(3)* the potential *health hazards* from sewage and waste disposal in the annexed areas, *(4)* the municipality's *financial ability* to make the improvements and furnish municipal services promised, *(5)* the need for *zoning and overall planning* in the area, *(6)* the need for *municipal services* in the area sought to be annexed, *(7)* whether there are *natural barriers* between the city and the proposed annexation area, and *(8)* the *past performance* and time element involved in the city's provision of services to its present residents.

Other judicially recognized indicia of reasonableness include *(9)* the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation; **Western Line [Consol. v. City of Greenville**, 465 So.2d 1057, 1059 (1985) ]; *(10)* the *impact* of the annexation upon the *voting strength of protected minority groups*, **Enlargement of Boundaries of Yazoo City [v. Yazoo City**, 452 So.2d 837 at 842-43 (1984) ]; *(11)* whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the *(economic and social) benefits* of proximity to the municipality *without paying their fair share of the taxes*, **Texas Gas Transmission Corp. v. City of Greenville**, 242 So.2d 686, 689 (Miss.1971); **Forbes v. Mayor & Board of Alderman of City of Meridian**, 86 Miss. 243, 38 So. 676 (1905); and *(12) any other factors* that may suggest reasonableness vel non. **Bassett v. Town of Taylorsville**, 542 So.2d 918, 921 (Miss.1989). **In the Matter of the Enlargement and Extension of the Municipal Boundaries of the City of Madison, Mississippi: The City of Jackson, Mississippi v. City of Madison**, 650 So.2d 490 (Miss.1995) (hereinafter, "**City of Jackson v. City of Madison**" ): **In the Matter of the Extension of the Boundaries of the City of Columbus, Mississippi: Kenneth R. Robinson, Walter J. Cunningham, Ralph Edward Hall, J.B. Wilkins, Arnette Neil Beard, and Ed Markham v. City of Columbus, Mississippi**, 644 So.2d 1168 (hereinafter, "**City of Columbus**" ); **City of Jackson**, 551 So.2d at 864; *See also*, **Bassett v. Town of Taylorsville**, 542 So.2d 918, 921-22 (Miss.1989).

**City of Ridgeland**, 651 So.2d at 550 (emphasis added). This Court has held that the twelve

factors "are only indicia of reasonableness, not separate and distinct tests in and of

7

themselves." ***In re Enlargement and Extension of Municipal Boundaries of City of Biloxi***, 744 So.2d at 276. In addition, "[t]he chancellor must consider all [twelve] of these factors and determine whether under the totality of the circumstances the annexation is reasonable." ***Id***.

***The twelve (12) indicia of reasonableness***

### 1. Need to Expand

¶9.     The City's main argument for this indicium of reasonableness is that the chancellor erred in finding that the indicia weakly suggests annexation of a smaller portion of the area. The City argues that the chancellor is correct in his assertion that the City has experienced spillover growth, however, Exhibit L-25 demonstrates spillover in all areas of the PAA and not limited to the Pendorff area. In addition, the City concedes that the population has declined, but that the rate of decline has slowed in the last decade and the City only lost 434 people. The City further argued that the City is 72.4% developed. The traffic counts increased as the chancellor noted, but the increase was not limited to the Pendorff area. Further, Laurel is considered the economic hub of the area and the primary employment for the area is based in Laurel. The spillover growth also occurred in all areas such as housing, an industrial park, schools and churches without the benefit of municipal zoning and planning. Further, the PAA has over 150 businesses and the sales taxes are not part of the City's tax base.

¶10.     The trial court ruled:

> The evidence reflects that Laurel is the economic hub of Jones County. The area's primary employment base is in Laurel, which has taken the lead in economic and industrial development. It was observed that Laurel is a beautiful city and no doubt a great place to live. Many fine homes and well kept premises were seen; however, many deteriorating or dilapidated properties were also

8

seen. It appeared that many of the latter were scattered about the City on small lots, not easily given for development in our present society which demands newer, bigger and better.

The population of the City, as reflected by the census, has been in a steady decline, dropping from 27,889 in 1960, to 24,145 in 1970, to 21,890 in 1980, to 18,827 in 1990 and to 18,393 in 2000.

Economic activity in Laurel has increased over the past 20 years. The census figures indicate that 2500 more people worked in businesses in Laurel in 1997 than in 1977. (Exhibit L-116).

Building permits as reflected on Exhibit L-15 indicate a steady level of development.

Traffic counts have also increased[.] (Exhibit l-90)[.]

Michael Slaughter, called by the City and accepted as an expert in the field of civil engineering and urban regional planning, was of the opinion that as true of other older cities, as the population of laurel decreased, spillover growth took place just outside the City in the proposed annexation area. Exhibit L-25 reflects that shift in population.

Exhibit L-92 reflects that Laurel is 72.4% developed. In the opinion of Mr. Slaughter this level of build out has traditionally been viewed as indicating a need for expansion.

On the other hand, Joseph Lusteck, called by the objectors ans also recognized as an expert in the field of civil engineering and urban and regional planning, testified that in his opinion Laurel did not need to expand to accommodate a need for additional housing or population growth and that the decreasing population and declining density of inhabitants over 40 years did not indicate a need for territorial expansion of the City. He testified that in his opinion, Laurel was in a stable situation as far as need to expand and there was a lot of property in the City of Laurel that could be developed.

Mr. Jim Elliot, a consulting engineer and planner, testified as an expert for the Sharon area objectors that there was a substantial area of the city available for future development.

9

Mayor Susan Vincent acknowledged that jobs have been lost, companies had moved out of Laurel and that a number of houses had been torn down since 1990. That even so, there were five new subdivisions proposed within the present city. Other testimony, however, indicates that houses and lots in some of these subdivisions, are not selling.

The City of Laurel failed to demonstrate a need for additional land for residential or commercial development and failed to offer any proof that there was a demand for land in the City that could not be met.

This indicia weakly suggests that annexation of a smaller portion of the area proposed to be annexed is reasonable.

¶11.    This Court in the case of *In the Matter of the Enlargement and Extension of the Boundaries of the City of Macon v. City of Macon*, 854 So.2d 1029, 1034 (Miss. 2003), listed numerous factors to consider when determining whether a City has a reasonable need for expansion. When determining this indicum of reasonableness, the following factors may but do not have to include:

> (1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity. *In re Enlargement and Extension of Mun. Boundaries of City of Biloxi*, 744 So.2d at 279; *Matter of Enlargement and Extension of the Mun. Boundaries of the City of Jackson*, 691 So.2d 978, 980 (Miss.1997); *Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So.2d 548, 552 (Miss.1995); *Matter of Extension of Boundaries of City of Columbus*, 644 So.2d 1168, 1173 (Miss.1994).

*City of Macon,* 854 So.2d at 1034. This Court has held that it has "declined to set an absolute amount of usable vacant land that would prevent annexation." *In the Matter of the Extension*

*of the Boundaries of the City of Hattiesburg*, 840 So.2d at 85. Indeed annexation in various cities such as "Southaven, Madison, and Ridgeland, which had usable vacant land of 43%, 59%, and 48%, respectively" were approved by this Court. *Id*. *See also Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So.2d at 554-56; *Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So.2d 490, 496 (Miss. 1995); *Matter of City of Horn Lake*, 630 So.2d 10, 18 (Miss. 1993). This Court refuses to set a limit on the vacant land available and has approved annexations when there has been as much as 59% usable vacant land available to an area. In addition, the evidence and testimony below revealed that the City met a number of the factors referenced in *City of Macon*, 854 So.2d at 1034, to meet the need to expand.

¶12. The chancellor determined that the indicium of reasonableness for the need to expand weakly favored limited expansion of the proposed annexation area.

## 2. Path of Growth

¶13. The chancellor found that the proposed annexation area was in the "path of growth of the City of Laurel." Further, the chancellor found that this indicum "weighs in favor of the reasonableness of the annexation." The City argues that the chancellor was correct in this ruling. However, the City claims that this indicum weighs in favor of all the proposed annexation areas and not exclusively to the Pendorff area.

## 3. Health Hazards

11

¶14.   The chancellor found that this indicium weighed in favor of annexing the Pendorff area only.   As to the other parcels, the chancellor found that there was evidence of some problems with septic tanks and sewage, but the chancellor was unable to determine whether the potential health hazards exist to the extent of allowing annexation in these area. Indeed, the chancellor placed findings in his opinion that specifically addressed each parcel, however, the findings only noted that the objectors knew of no health problems and the Sharon residents believed that the sewers operated properly.

## 4.  Financial ability to provide municipal services

¶15.   The chancellor found that this indicium weighed against the reasonableness of the annexation of the PAA. However, the chancellor stated in part:

> **When the annexation process began, Laurel was in good financial condition, and the cost of providing the improvements and municipal services as planned was well within the ability of the city to meet. However, when the annexation area was increased substantially by the addition of the North Shady Grove area, the cost increased tremendously to approximately $36,000,000.**   When it is considered that most of these estimated expenses are projected to be spent after Phase I is completed, estimated to be 5 years, it is reasonable to anticipate that these costs will increase....

(emphasis added). The chancellor's opinion noted that he was unable to determine the cost of the annexation.   **However, the annexation in terms of each parcel is not discussed separately.**   In addition, the chancellor initially found that but for the increase in the annexation area by the addition of the North Shady Grove area the cost increased by $36 million.   Ultimately, the chancellor found that annexation was warranted in the Pendorff area. As stated before, the City had to enlarge its original PAA to include all of the Shady Grove

12

Utility District pursuant to HB 1730. The chancellor's opinion is silent as to whether excluding the North Shady Grove area, which increased the size of the original PAA, the City had the financial ability for the Western area. Presumably the City had the financial ability based upon the chancellor's initial finding that indicated that but for the addition of the North Shady Grove area Laurel was in a good financial condition. We find that there are insufficient findings by the chancellor on this factor.

### 5. Zoning and planning

¶16. The chancellor found that this indicium weighed in favor of annexing the Pendorff area and against the reasonableness of the other PAAs. The chancellor mainly referenced the fact that a large portion of the PAA is rural and many objectors did not need or want these services from the City. On the one hand, the chancellor stated:

> Laurel has in place standard building and housing codes, a comprehensive plan, and zoning ordinances to direct and guide growth in the area. Each of these items would provide some measure of protection for orderly planning and development. Generally these codes and ordinances work for the benefit of the citizens of a city.
>
> Some if the proposed areas to be annexed have a greater need for planning than others. With the exception of Pendorff, most of the areas proposed for annexation are rural.

Ultimately, however, the chancellor saw "little need for municipal level zoning, overall planning or municipal service is this mostly rural and agricultural area. Those who testified were content with the services they were receiving."

¶17. Obviously, the chancellor saw that some of the areas in the PAA needed planning despite that fact that they were rural in nature. However, the Court is not given an adequate

13

understanding of how much planning each parcel may need. All of the areas presumably would benefit from zoning as none of the PAA had zoning ordinances in place.

¶18. Accordingly, there is insufficient reasoning by the chancellor upon which this Court can make a ruling as to this indicium.

### 6. Municipal services

¶19. The chancellor found that this indicium supported the reasonableness of annexation for the Pendorff area, however, it tended to weigh against the reasonableness of annexation for the remainder of the PAA. In addition, the chancellor makes much of the fact that the City's proposed Ordinance No. 1381-2001, which provided for improvements over the course of five years including water, sewer and lighting and other municipal and public services, was later modified after the Services and Facilities Plan was adopted by the City. The amended ordinance contained limiting words in reference to the services and facilities plan, which contain the water improvement plan and the sanitary sewer improvements plan, to be performed "where necessary and economically feasible."

¶20. However, the City argues that as to the water and sewer lines, the City's plan is funded from user fees and not tax dollars. In addition, the City points out that much of the PAA already has some of these services in place by the City. In terms of the original PAA, 63% of the residential and 84% of commercial connections of the original annexation area already received City water. Because of the required extension to the original PAA imposed by the court, the extended PAA, which added the entire Shady Grove Utility District pursuant to HB 1730, has 53% of residential and 66% of commercial connection which already receive City

14

water. As to sewer, 33% of the residential and 17% of the commercial sites receive City sewer services. Clearly, other municipal services such as police and fire protection would also be provided by the annexation to the City.

¶21. Again, the chancellor wrote in general terms as to the municipal services that the City planned to provide to the PAA and to a few current conditions in the City. However, the analysis was not broken down to specifically give reasons for annexation or no annexation of a particular parcel. Without this analysis, this Court cannot make an informed ruling on this indicium.

### 7. Natural barriers

¶22. The chancellor ruled that the "evidence showed no existence of natural barriers between the City and the proposed annexation area. The City made no argument in its brief on this issue, presumably because this indicium was determined to have been satisfied by the chancellor. Accordingly, this Court need not address this issue on appeal.

### 8. Past performance

¶23. The chancellor found that this indicium weighed in favor of the reasonableness of a smaller portion of the PAA. The chancellor noted that the objectors allege that the City's past performance has not always been good. While the City acknowledged some deficiencies, the chancellor found that the City "is dealing with problems that are common to all cities in a responsible manner." Once again, it is unclear from the chancellor's opinion which of the parcels or smaller portion of the PAA would be reasonable for annexation without a more detailed break down of each parcel.

### 9. Economic or other impact on residents and property owners

¶24.    "[T]he mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation." *City of Hattiesburg*, 840 So.2d at 93 (quoting *In re Enlargement and Extension of Municipal Boundaries of the City of Biloxi*, 744 So.2d 270, 284 (Miss. 1999)); *In the Matter of the Confirmation of Alteration of the Boundaries of the City of Horn Lake,* 630 So.2d 10, 23-24 (Miss. 1993).  This Court has held:

> [T]he Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area. The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness. *Jackson*, 551 So.2d at 867-8.

*Matter of the Extension of Boundaries of City of Columbus*, 644 So.2d 1168, 1172 (Miss. 1994).  *See also* *In the Matter of the Confirmation of Alteration of the Boundaries of the City of Horn Lake,* 630 So.2d 10, 23-24 (Miss. 1993) (quoting *Matter of Boundaries of City of Jackson*, 551 So.2d at 867-868).  In *Columbus*, this Court further held that "as equity and reasonableness are equivalent, the fairness of a given annexation is the ultimate question that we seek to answer." 644 So.2d at 1172 (citing *Western Line Consol. Sch. Dist. v. City of Greenville*, 465 So.2d 1057 (Miss. 1985)).

¶25.    The chancellor found that this factor supported the annexation of the Pendorff area, but weighed against the reasonableness of the annexing the other portions of the PAA.  The chancellor stated in part:

16

It almost goes without saying that if they are annexed, they will pay higher taxes, but what will they receive in return? Will they receive valuable services in a reasonable time? **The biggest item of expense for the City is for sewer service**, and while urging the present septic tanks in use constitute a potential health hazard, the City acknowledges that it is uncertain when these services will be available, if ever.

In Phase 1, the City's five year plan, the plan is to provide only a backbone system for future services. Few if any residents of the area proposed to be annexed will receive any benefits from the sewer system in phase 1. The City also acknowledges that while a portion of phase 2 might be started, it might be as long as ten to fifteen years for phase 2 to be completed, or it may never be completed. The City acknowledges that water and sewer services will not be available to any resident unless if is found to be necessary and economically feasible.

**At present the City does not have the financial ability or plans in place to handle such a massive undertaking.**

The residents of the area proposed for annexation are being promised little. They already have what they consider to be adequate fire protection, police protection, water services, trash and garbage collection, pest control, and with exception of the Pendorff area, they are satisfied with what they have.

Many objectors in the area proposed to be annexed testified as to their satisfaction with existing services and infrastructure and the adequacy thereof. Additional taxes and fees imposed by the City of Laurel for unwanted and unnecessary city services negatively impact these residents and property owners.

(emphasis added).

¶26. The chancellor's main focus appears to be on a lack of sewer services to the PAA. Some of the PAA already has City sewer services as noted in a previous indicium. However, the chancellor also relied upon the fact that the City does not have the financial ability to provide the sewer services. As noted in the financial ability indicium of reasonableness, the chancellor stated that the "original" PAA had the financial ability for annexation but that the

17

inclusion of the "extended" PAA area, that added the entire Shady Grove Utility District pursuant to HB 1730, would increase cost by $36 million. The increase in costs, due to the addition of the entire Shady Grove Utility District, therefore resulted in the chancellor finding that the City no longer had the financial ability for annexation. This finding was made without consideration whether one particular parcel that was not annexed would change the City's financial ability in regard another parcel then having the necessary funds. In addition, the chancellor did not annex any of the area that was added to the " extended" PAA and in fact annexed less than the "original" PAA.

¶27. Further, the chancellor failed to note that sewer services are funded through usage fees and not taxes, meaning that people without City sewer services do not pay for them. However, the chancellor failed to consider each parcel on an individual basis. Without this analysis, this Court cannot make an informed ruling on this indicium.

### 10. Impact on minority voting

¶28. The chancellor stated, in part:

> The Court has no evidence as to where the white and African-American citizens reside in the area proposed to be annexed; and therefore has no way to solve this problem by reducing the area to be annexed.
>
> This indicia weighs very heavily against the reasonableness of the proposed annexation.

¶29. The chancellor noted that the 2000 census indicated that City of Laurel was 59.4% non-white and 40.6% white. The PAA was 26.8% non-white and 73.2% white. If annexation was approved, the population would be 51.2% non-white and 48.8% white. The City argues that

18

Pendorff was the only area allowed to be annexed, but it also had the highest white population with only 22 African-Americans out of a total of 691 citizens. In addition, the City argues that this factor could not mitigate against the annexation of the Laurel Sports Plex as few whites live in that area nor against the annexation of the northern area where there is a concentration of African-Americans. Further, the City argues that it had no discriminatory purpose for the annexation.

¶30. Again, this Court does not have enough information on this indicium. The chancellor clearly could have made a more substantial finding as to each area and made a determination as to whether there was a discriminatory intent by the City.

### 11. Enjoyment of economic and social benefits of the municipality without paying a fair share of taxes

¶31. The chancellor found that this indicium weighed in no one's favor. The chancellor ruled:

> When a resident of the area proposed to be annexed has paid any sales tax, gasoline tax or other tax or charge for water or sewer or other fee required by law to be paid, he has paid his fair share.

> The Court makes no finding on this indicia for the reason stated in *Matter of Extension of Boundaries of City of Columbus*[,] 644 So.2d 1168, 1180 (Miss. 1994).

> This indicia weighs in no one's favor.

¶32. Presumably the chancellor is referencing footnote 4 in *City of Columbus*, which states:

> The lower court made no finding on this indicium. The value of this item as an indicator of reasonableness is questionable because it is difficult to

19

envision a situation where an individual's "fair" share of taxes is greater than the amount required by law. Residents of the PAA pay required county taxes as well as sales taxes when they buy goods in Columbus. Fairness requires no more.

*Matter of Extension of Boundaries of City of Columbus*, 644 So.2d 1168, 1180 n.4

(Miss. 1994). However, this Court in *In the Matter of the Extension of the Boundaries of*

*Hattiesburg*, 840 So.2d 69, 93 (Miss. 2003), stated:

> This indicium focuses on the issue of whether property owners and other inhabitants of the PAA would be able to enjoy the benefits of the city because of the reasonable proximity to its corporate limits without paying their share of taxes. The chancellor found that the growth of the PAA was either "spill-over growth from Hattiesburg, or growth intended to take advantage of Hattiesburg's growth." As the chancellor noted from his thorough and complete assessment of the annexation, "Clearly, Hattiesburg is the economic engine for this region." It appears from the record in this case that if the residents and business owners in the PAA were allowed to continue to remain outside the city limits of Hattiesburg, they would be receiving the City's benefits without paying the taxes for the City's support. Certainly, the chancellor's findings on this indicium are supported by substantial and credible evidence.

¶33.    This Court has further held in *Bassett v. Town of Taylorsville*, 542 So.2d 918, 922

(Miss. 1989), "the Constitution protects these parties from paying more than their fair

share of taxes in the community upon annexation. See Miss. Const. § 112 (1890 as

amended); U.S. Const. Amdt. XIV." Similar to *In the Matter of the Extension of the*

*Boundaries of Hattiesburg*, 840 So.2d at 93, the chancellor in the case sub judice also

found that Laurel was the "hub." "The evidence reflects that Laurel is the economic hub of

Jones County." This Court finds that if Laurel is considered the "economic hub of Jones

County" then it is likely that objectors in the PAA would benefit from the economic and

20

social benefits provided by annexation. However, the chancellor found this indicium to weigh in no one's favor, further he did not state whether any parcel would benefit on an individual basis. Therefore, this Court does not have enough information upon with to make a ruling as to this indicium.

### 12. Any other factors that may suggest reasonableness

¶34. Under this indicium the chancellor found that no other factors were necessary for a decision. The City makes no argument for this indicium of reasonableness in its brief, therefore, this Court need not address this issue.

35. We find that the chancellor did not issue an order as to his findings and ruling on the issue of whether House Bill 1730 violated § 88 of the Mississippi Constitution of 1890. Therefore, this Court cannot address this issue on appeal. On remand, the chancellor is instructed to issue an order as to his findings and ruling on the constitutionality of HB 1730. This Court has insufficient information based upon the chancellor's opinion to base its determination. Some of the indicia were adequate, however, the twelve indicia overall were not detailed enough pursuant to its application to each parcel. Accordingly, the judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. As we review annexation cases under the "totality of the circumstances" regarding the indicia of reasonableness, the chancellor must consider the Pendorff (Southern Parcel) indicia, as well as, the Western Parcel (or Sports Complex area), the Shady Grove Parcel (Northern Parcel) and the Sharon Parcel (Northern Parcel) on remand.

21

¶36. This Court instructs the chancellor (1) to provide more detailed reasoning as it relates to each indicum of reasonableness and as it applies to each parcel and (2) to enter a new judgment in accordance with these findings and conclusions.

¶37. **VACATED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**